IN RE JUVENILE APPEAL (85–2)*
(2092)

HULL, SPALLONE and DALY, Js.

Argued November 6, 1984—decision released January 22, 1985

*Elaine Gordon,* for the appellant (mother of the minor children).

*Edward J. Dolan,* with whom, on the brief, was *Kent Harvey,* for the appellee (petitioner).

SPALLONE, J. This is an appeal[1] from a decision terminating the respondent mother's parental rights to her two children pursuant to petitions filed by the children's paternal aunt in accordance with General Statutes § 45-61f.

The record reveals the following facts: In early October, 1980, the mother and father of the children telephoned the petitioner from Texas and asked her to take the children. The parents feared that the children would be institutionalized following the imminent arrest of the father. The children were flown to Connecticut at the expense of the petitioner. They brought with them a power of attorney executed by both parents, giving the aunt and the paternal grandparents authority to provide for their "health, welfare and safety as well as [their] education, maintenance and support." At the time of their arrival, the daughter had not yet turned five, and the son was three. The petitioner did not learn until later that the father's impending incarceration was for the sexual abuse of his daughter.[2]

Upon their arrival in Connecticut, the children appeared and behaved strangely. The petitioner testified that their skin was white and transparent-looking, that the son was "covered with bug-bites, head to toe,"

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] This appeal was originally filed in the Appellate Session of the Superior Court. General Statutes § 51-197a (c).

[2] The father pleaded guilty to this charge and is presently serving a ten-year term of imprisonment in Texas. He is not appealing the termination of his parental rights.

and that both children ate voraciously with their hands, hoarded food in drawers and among their bedclothes, attempted to eat inedibles such as styrofoam cups, and appeared unfamiliar with the items of a normal child's diet. The children lacked age-appropriate motor coordination and neither was toilet trained. Both were sexually precocious. The three year old son exhibited a knowledge of profane four-letter words and gestures. He explicitly described and reenacted experiences of sodomization by his father and was observed in sex play with his sister. Neither child ever asked or cried for either parent. The petitioner also testified that the mother telephoned the petitioner only once, two months after the children arrived in Connecticut. When she called, she did not ask about the children except to state that she had no money, could not then care for them, and that she did not want her daughter to be sexually abused by her husband.

In November, 1980, the petitioner initiated proceedings to terminate the rights of the mother and father on the basis of the parents' signed consent. Upon learning of the full effect of termination of their parental rights, however, both parents retracted their consents. The petitioner subsequently amended her petition for termination to include as additional grounds that the children had been abandoned by their parents and that they had been denied, by reason of acts of parental commission or omission, the care, guidance or control necessary for their physical, educational, moral and emotional well-being. After a trial to the court, judgment was rendered for the petitioner on the latter ground.[3] The mother now appeals from that judgment.

[3] General Statutes § 45-61f (d) provides in pertinent part: "[T]he court may approve the petition terminating the parental rights . . . if it finds, upon clear and convincing evidence . . . (2) that the child has been denied, by reason of acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being whether such denial is the result of the physical or mental incapabil-

On appeal, the mother questions the procedure and evidence upon which the decision to terminate her parental rights was based. She claims that the trial court erred by denying her a continuance, in admitting out-of-court statements by her and the children and in admitting a report of an out-of-state social agency, and in finding that the petitions had been proven by clear and convincing evidence.

I

In order to address the respondent's first claim of error, the lengthy sequence of events which led to the denial of the continuance need not be set forth in detail. Suffice it to say that from the initiation of these proceedings in November, 1980, until the date of trial on December 22, 1982, this matter was continued numerous times. When trial dates of December 22, 1982, and December 23, 1982, were ultimately scheduled, notice of those dates was mailed to the parties by the clerk of the trial court on November 4, 1982, and November 15, 1982. On December 20, 1982, the respondent filed a request for a continuance on the ground that she could not leave her place of employment. The trial court denied the motion "[i]n view of the long pendency of this case, the well-documented notices that were sent of these December trial dates, and the nature of the reason given for seeking the continuance." The matter proceeded to trial as scheduled, and the court found the issues for the petitioner.

The respondent argues that the trial court's refusal to grant her the continuance she requested on December 20, 1982, was a denial of due process. Essentially, she contends that her due process rights should have

ity of the parent or conditions attributable to parental habits, misconduct or neglect, and these parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not, in the best interests of the child, be permitted to exercise, parental rights and duties . . . ."

been determined by the balancing test set forth in *Mathews* v. *Eldridge,* 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), that the trial court did not apply the procedural safeguards established in that case, and that through its "laxity," she was denied any means to effectively safeguard her interest in her children.

*Mathews* v. *Eldridge,* supra, which concerned a parent's right to be represented by counsel in termination proceedings, mandated that three factors be considered in a termination proceeding: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge,* supra, 335, quoted in *In re Juvenile Appeal (Docket No. 10155),* 187 Conn. 431, 436, 446 A.2d 808 (1982). The respondent focuses upon the second factor of the *Mathews* test and directs this court's attention to *In re Juvenile Appeal (Docket No. 10155),* supra, as an example of a termination of parental rights case which utilized an appropriate procedure to minimize risk of error and safeguard an absent parent's interest. The respondent father in *In re Juvenile Appeal (Docket No. 10155),* supra, was incarcerated in California at the time of trial and requested a continuance until his release from prison. The trial court denied his request but allowed him to testify and be cross-examined by long-distance telephone, and to review and discuss with his attorney the transcript of the first day of hearings before the second session was held. In his appeal from the trial court's decision terminating his parental rights, the father raised as a ground of error the denial of his request for a continuance. The Supreme Court found that the trial court's

unusual arrangements to secure the father's participation so reduced the risk of error created by his absence that the balancing test of *Mathews* v. *Eldridge,* supra, did not support his due process claims.

The case before us is markedly different from *In re Juvenile Appeal (Docket No. 10155),* supra, and that case cannot serve as a procedural model for this one. Here, the respondent's absence from trial was within her power to remedy. The record discloses that she was notified by her attorney of the trial dates on November 11, 1982, but delayed informing him of her inability to attend until over a month later. Two days before the trial, she requested that the trial be continued for fear that if she were to leave her restaurant job in Ticonderoga, New York, at that time of year, she would lose her position and suffer economic hardship.

Practice Book § 1056 provides that continuances in juvenile matters "shall not be allowed unless good cause is presented." A motion for continuance is addressed to the discretion of the trial court, and a ruling on a motion for continuance will not be upset absent a showing of clear abuse of that discretion. *Vossbrinck* v. *Vossbrinck,* 194 Conn. 229, 232, 478 A.2d 1011 (1984); *Leveston* v. *Leveston,* 182 Conn. 19, 24, 437 A.2d 819 (1980). In this case, the respondent had never appeared at a hearing since the commencement of these proceedings, and there was no evidence to show that she would soon become available. In the absence of a mechanical test for determining when a denial of a continuance is so arbitrary as to violate due process, the answer must be found in the circumstances of the case, with particular emphasis on the reasons presented to the trial judge at the time the request is denied. *Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921, reh. denied, 377 U.S. 925, 84 S. Ct. 1218, 12 L. Ed. 2d 217 (1964); *State* v. *McKnight,* 191 Conn. 564, 576, 469 A.2d 397 (1983); *State* v. *Bethea,* 167 Conn. 80, 84,

355 A.2d 6 (1974). In view of the long history of these proceedings and the respondent's minimal economic reason for the continuance, we hold that the respondent's due process claim is without merit and the trial court's denial of the continuance was well within its discretion.

## II

The respondent's next claim of error concerns the trial court's evidentiary rulings. We note initially that a juvenile proceeding is essentially civil in nature and that certain procedural informalities are constitutionally permissible. Under the guise of informality, however, "procedural safeguards cannot be swept away"; *Anonymous* v. *Norton,* 168 Conn. 421, 425, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975); in so serious a matter as the termination of parental rights. This informality has been interpreted to require a "liberal rather than a strict application of the formal rules of evidence, provided due process is observed. . . . [W]here such evidence is likely to be determinative of the matter, the court should return to the more formal rules of evidence." Tait & LaPlante, Handbook of Connecticut Evidence (1982 Sup.) § 1.2. Informality cannot, therefore, justify procedural irregularity where the natural rights of parents in their children are concerned. *Anonymous* v. *Norton,* supra.

With this in mind, we turn to the evidentiary rulings which the respondent claims as error. She first contends that the court erred in admitting out-of-court statements by herself, the children's father and the children. The parents' statements were offered at trial under the exception to the hearsay rule for admissions by a party. *State* v. *Stepney,* 191 Conn. 233, 250, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). Such statements are

admissible against the party who made them; Tait & LaPlante, Handbook of Connecticut Evidence (1976) § 11.5, p. 186; and were properly introduced to establish the mistreatment of the children by the declarant. The respondent contends, however, that the court erred to the extent that it viewed any admission of one parent as an admission against the other.

The acts of both parents are pivotal in assessing the chain of circumstances which led to these proceedings. While acts of commission in a case such as this are fairly ascertainable through direct evidence, proof of acts of omission tends to be elusive. The young age of the children and the fact that their mistreatment occurred in the privacy of the family home demand that proof of one parent's failure to halt the mistreatment perpetrated by the other must rest largely upon circumstantial evidence. We thus find that the statements admitted to establish the declarant parent's acts of commission were relevant to establish, by inference, the nondeclarant parent's acts of omission. The fact that an admission by one parent might also support an inference of acts of omission by the other does not go to the admissibility of the statement. We hold that the court did not err to the extent, if any, that it viewed one parent's admission to support an inference against the other.

The respondent next claims that the trial court erred in admitting statements by the children on the ground that the statements were verbal acts. She contends that they were hearsay and thus inadmissible. We disagree. The children's statements, presented by the petitioner and the expert witnesses, revealed that the children possessed a level of acquaintance with sexual activity far beyond their years. Testimony that the son threatened to "make love" to his five year old sister and that he recounted being sodomized by his father were admissible as verbal acts. Those statements, totally apart

from the truth of their content, were relevant to the conditions in which the children lived, if not to an inference of outright parental misconduct.

The final claim of error which the respondent raises in connection with the admission of evidence concerns a letter from the Texas department of human services addressing the circumstances of the children and the parents prior and shortly subsequent to the time the children arrived in Connecticut. The letter was appended to a report prepared by a department of children and youth services (hereinafter DCYS) social worker. The court admitted the entire DCYS report, including the appended letter, over the objection of the respondent who claimed that the letter was inadmissible hearsay.

The entire DCYS report was prepared pursuant to General Statutes § 45-61f (c), which provides in part that such reports "shall be admissible in evidence, subject to the right of any interested party to require that the person making it appear as a witness, if available, and subject himself to examination." General Statutes § 45-61f (c) (3). In this case, the social worker who prepared the DCYS report was available for cross-examination on the contents of the report, including its appendices. The admission of the letter, as an appendix to the DCYS report, was properly within the exercise of the court's discretion.

### III

The respondent's final claim is that the court erred in finding that the petitioner proved by clear and convincing evidence that the children had been denied by reason of acts of parental commission or omission the care necessary for their general well-being as set forth in General Statutes § 45-61f (d) (2). The essence of the respondent's claim in this regard is that direct evidence

as to any acts of commission or omission was lacking and that the judgment rested upon speculation and inference.

While it is true that evidence of the respondent's acts of omission was largely circumstantial, that evidence was sufficient. The law does not distinguish between direct and circumstantial evidence as far as probative force is concerned. *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984). The standard of "clear and convincing proof" used in this case "denotes a degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution." *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 536–37, 368 A.2d 125 (1976). In a criminal case, the jury may draw reasonable, logical inferences from the facts proven as long as they do not resort to speculation and conjecture. *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38 (1980). In a case involving substantial circumstantial evidence, the cumulative impact of a multitude of facts, and not any one fact, may establish guilt. *State* v. *Bember,* 183 Conn. 394, 397, 439 A.2d 387 (1981). Insofar as circumstantial evidence can be and is routinely used to meet the higher standard of proof in a criminal prosecution, so can it be used in a case such as this where the applicable standard is that of clear and convincing proof.

It is not our function to retry the case or to pass upon the credibility of the witnesses; *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975); and we will not. Our review of the evidence indicates that the findings of the court were amply supported by the evidence.

There is no error.

In this opinion the other judges concurred.