[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: TERMINATION OF PARENTAL RIGHTS
On June 30, 1989, the Commissioner of the Department of Children and Youth Services (DCYS) filed a petition pursuant to 17-43a of the General Statutes, seeking to terminate the parental CT Page 707 rights of Dorothy Ann Burkle in and to the child Carrie Burkle. Said statute permits said Commissioner to file such a petition with respect to a child committed to her in a prior commitment proceeding. In proceeding to terminate parental rights, "each element of the statute must be proved by clear and convincing evidence." In Re Juvenile Appeal, 192 Conn. 254, 267; Santosky v. Kramer, 455 U.S. 745, 474-8 (1982).
The petitioner sought termination as to the parent on the grounds (1) failure of the parent to achieve personal rehabilitation; and (2) denial by reason of acts of omission or commission, the care, guidance, or control necessary for the child's well-being. See 17-43a, (b), (2), and (3). The petitioner also alleged that all of the reasons had existed for more than one year.
The specific allegations in support of the petition state that the mother —
(a) has not pursued appropriate drug treatment;
(b) has not pursued family therapy effectively;
(c) did not terminate a relationship with a man who had threatened the morals of the child;
(d) had violated repeatedly laws relating to shoplifting, leading to her incarceration;
(e) had not provided security for the child at home visits;
(f) had not secured a safe and stable home environment for the child;
(g) had not improved her ability to provide structure and discipline for the child.
Prior Proceedings
On November 25, 1986, the child Carrie was adjudicated a neglected and uncared for child, having specialized needs and suffering emotional neglect. The child was committed to DCYS for eighteen months. (Barnett, J.). The court also approved expectations for the mother. In addition to the requirements that she keep DCYS informed of her whereabouts, keep all DCYS appointments and visit her child, the expectations included:
(a) that she participate in counseling at Highland Heights:
(b) procure stable and adequate housing: CT Page 708
(c) that she participate in a drug treatment program, or remain drug-free
(d) that she keep the child safe physically and sexually on off-premises visits.
The child was placed at Highland Heights, a residential treatment center in New Haven, on December 15, 1986. Her father, Bradley Burkle, died of a heart attack on December 20, 1986.
On August 25, 1988, the Commissioner filed a petition to extend the commitment. The petition alleged that the mother had not made the necessary changes in her lifestyle to protect the child emotionally and physically, and was not in individual treatment, nor in drug treatment.
The study in support of such extension filed by the Commissioner set forth the extent to which the mother had succeeded, or failed, in achieving the court-ordered expectations. Among these items were a failure to acknowledge responsibility for the injurious things that led to the commitment. She was not drug-free, she did not undertake individual therapy, and she had been arrested for shoplifting several times.
On October 11, 1988, the commitment was extended for eighteen months. As noted supra, the instant petition was filed on June 30, 1989, alleging that the grounds for adjudication had existed for more than one year prior to the date of filing.
Hearing
Prior to commencing the hearing on the petition, the court (Downey, J.) ordered a psychological evaluation of the mother and of the mother-child relationship.
The court commenced hearings on January 29, 1990, and continued on January 30, 1990, February 20 and 26, and March 1. The court received testimony from Judith Stone, a DCYS case worker, Officer Bruce Scobie of the East Haven Police Department, Office Dan Travisano of the Branford Police Department, and from Ann DelMonico and Joseph Cordova, acquaintances of the respondent. The court also heard testimony from Judith Ross, a social worker at Highland Heights, Alan Shulik, a clinical psychologist, and from Ernest Henderson, the respondent's brother, and from Dorothy Henderson, the grandmother of the respondent. Thereafter, briefs were ordered, which were filed on March 23, 1990. In addition to the testimony, the court received several exhibits, including the statutory social report, and records of the respondent's shoplifting records. CT Page 709
Adjudication
 Based upon facts as of date of filing of petition on June 30, 1989
As noted supra, the Commissioner alleged two grounds as her basis for terminating the respondent's parental rights.
Before considering whether to grant the petitions, the court must make a finding that one such ground has existed for more than one year prior to the filing of the petition. In Re Juvenile Appeal, 189 Conn. 66, 79; In Re Juvenile Appeal (Annonymous),177 Conn. 648, 673.
 A Failure to achieve personal rehabilitation 17-43a(b)(2)
"Personal rehabilitation" as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. In Re Migdalia M., 6 Conn. App. 194,203. The statute "does not provide that in order to achieve personal rehabiliation a parent must meet the expectations of the court as ordered pursuant to a commitment hearing." P. 206. Such expectations may be considered by the court as a guide to the required finding that the parent could assume a responsible position in the life of the child within a reasonable time, especially in the light of the factors set forth in 17-43a(d). See Shavoughn K., 13 Conn. App. 91, 100; In Re Barbara J., 215 Conn. 31, 47.
 B Denial by acts of omission or commission of the care, guidance or control necessary for the physical, educational, moral or emotional well-being of the child. 17-43a(b)(3).
Under this ground, the court must determine whether the evidence proves that the child has been so denied, by clear and convincing evidence. If the court so finds, then the court must find by clear and convincing evidence that "`These parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not, in the best interests of the child be permitted to exercise, parental rights and duties.'" In Re Juvenile Appeal (84-AB), 192 Conn. 254, 269.
Findings of Facts CT Page 710
The child was born on March 16, 1979 to Bradley Burkle and Dorothy Burkle.
On July 9, 1986, the Commissioner filed a petition in this court alleging that the child was neglected and uncared for, in that:
1. The child's home could not provide the specialized care her emotional condition required.
2. She was neglected emotionally.
3. She was allowed to live under conditions and circumstances injurious to her well-being.
At the time, the respondent was living at 118 Henry Street in East Haven, and the father (now deceased) was living in Meriden.
The affidavit filed in support of the petition alleged that the child had been evaluated by the Yale Child Study Center in October 1985 when the child was six years old. The Center's report recommended day treatment for the child, because of her disruptive behavior in school.
The same report stated that the respondent said that her boyfriend physically abuses her and verbally abuses the child, and is a drug user. The report also indicated the respondent's home was in violation of the fire and health standards established by law, and that the respondent had failed or refused to correct such deficiencies.
The report further stated that the respondent should not only clean up her disorganized home, but that she engage in counseling so as to create a stable environment for the child; and that the respondent has not pursued such direction.
After hearing on the petition, this court (Barnett, J.) entered a finding that the child's home cannot provide the specialized needs of the child and that the child had been neglected emotionally, and approved the expectations hereinbefore set forth.
On April 25, 1988, the Commissioner filed a petition to extend this commitment. The petition alleged, inter alia, that the respondent had not made the necessary changes to protect the child physically and emotionally, and that she was not in recommended individual treatment or in drug treatment.
On October 11, 1988, this court (Ramsey, J.) granted the petition to extend the commitment. The respondent entered into a CT Page 711 service agreement whereby she agreed:
(1) to keep scheduled visitation and therapy;
(2) to submit to monthly drug testing;
(3) to allow DCYS access to home so as to verify conditions
(4) to keep the child emotionally and physically safe.
At the hearing on the instant petition, the Commissioner filed her statutory report in support of the petition, through Judith Stone, the DCYS case worker. The report notes, "Mrs. Burkle's pattern of living has remained largely unchanged since Carrie's commitment." P. 3.
The witness addressed the expectations set forth in the original commitment. She noted that on a visitation in June 1989, the respondent's house was still filthy, was in violation of fire laws by having exits blocked, and that the water had been shut off for four months prior to that time. There was a six foot pile of trash in the front yard.
Having been ordered to keep away from Jon Fouser, she was arrested with him in Orange in April 1988 for shoplifting. Further, she ceased participation in a drug dependency program in 1987, and tested positive for heroin in September 1987.
The Commissioner offered evidence that since the date of commitment, the respondent had been convicted four times for shoplifting and once for failure to appear. As a result, she was committed to the Niantic facility. At one such incident, the child was with the mother when arrested, and responded by spitting at the arresting officer.
The court also received testimony from Judith Ross, the child's therapist at Highland Heights. She described the child at time of admission as depressed, lacking in self-esteem and withdrawn. She was eneuretic; and aggressive to others. With the therapy she has received, her actions are now improved, but she still tends to overeat.
In December 1987, Ms. Ross prepared a psychotherapy Treatment Agreement with the respondent aimed at reunification (Ex. C).
The essentials of such agreement were:
1) to cut off all ties with Jon Fouser to demonstrate to Carrie her concern for the injury inflicted by him; CT Page 712
2) to establish independence from drugs:
3) to obtain a stable source of income;
4) to establish a stable and safe living environment;
5) to seek individual counseling to address the issue of depression and lack of self-esteem;
6) to develop parenting skills by means of family therapy.
The witness then proceeded to describe the respondent's performance.
1) As to Fouser, the respondent had obtained a restraining order, but was still seeing him.
2) The respondent provided no tests for drugs; conversely, she was discharged from a methadone clinic for non-compliance.
3) The respondent obtained AFDC assistance.
4) In the spring of 1989 the witness inspected the respondent's premises and found them in disrepair and unsanitary.
5) In counseling the respondent did not pursue any referrals provided by Highland Heights.
6) Highland Heights provided family therapy up until the spring of 1989, but stopped because the respondent would not keep up in counseling.
The witness further detailed the respondent's participation in Highland Heights' program of joint therapy with the child. While originally such therapy was helpful, it deteriorated into simple visitation because the respondent was unable to be involved in such joint therapy. Instead she tended to discuss her own problems, her boyfriends, etc., rendering nugatory the efforts to obtain therapy. The witness also cited the incident of November 1988 when the child was with the mother when the latter was arrested for shoplifting in Branford as an example of the failure on the part of the respondent to protect the child. The child was separated from the respondent by a security guard. Upon her return to Highland Heights, her behavior had deteriorated. The witness was also of the opinion that the child feels the mother cannot take care of her.
The court also received testimony from Bruce Scobie, an East Haven police officer. He testified that he was called to the respondent's dwelling on June 26, 1989. He observed the house to CT Page 713 be in total disarray, with hypodermic needles and garbage strewn about. Animal feces and moldy food in dishes were on the floor. A small child, wearing only a diaper, was covered with red bites. The officer referred the child to DCYS. He also testified that he recognized the respondent from a previous shoplifting arrest, and that he had been called to the house a year previous when it was in the same condition.
Officer Daniel Travisano of the Branford Police Department testified as to the shoplifting arrest at Stop Shop on November 27, 1988, when the child was present, and spat at the officer.
Another witness, Ann DeMarco, testified that she lived at the Henry Street address from May 15 to June 15, 1989, and observed conditions similar to those testified to by Officer Scobie. She further described the daily use of intravenous drugs by the respondent, and that she drove the respondent to purchase drugs. She said that the respondent admitted to being a professional shoplifter, and that she had been using heroin for ten years.
Joseph Cordova, another tenant at the above time, essentially corroborated the testimony of DeMarco. He added that Mr. Fouser was on the premises from time to time. He estimated that the respondent would use heroin intravenously seven or eight times daily.
From all of the foregoing, the court finds that the Commissioner has proven the allegations of the complaint by clear and convincing evidence.
The child was first referred to the Yale Child Study Center because of her disruptive behavior in school. This was a direct result of the chaotic and unsanitary conditions of her home. The presence of Fouser, allowed by the respondent, with his attendant physical abuse of the respondent, created the emotional abuse of the child. In short, the child was forced to live in a chaotic, abusive, filthy, drug-ridden house. The respondent has done nothing since the child was committed to correct the situation. Conversely, she has undertaken to introduce the child to the world of shoplifting. As a result of such acts of the respondent, whether they be deemed acts of commission, e.g. bringing the child on a shoplifting trip, or omission, e.g. failure to provide a safe, sanitary and decent home for the child (see In Re Juvenile Appeal (85-2), 3 Conn. App. 184, 191), to the effect that such failure is an act of omission), the child has been required to be in institutional treatment since 1986, and the respondent cannot provide a proper home for the child. Likewise, the incident with Officer Travisano indicates the impairment of her moral well-being, i.e. the lack of proper guidance. CT Page 714
Likewise, as to personal rehabilitation, the Commissioner has proved her case by clear and convincing evidence. With the sole exception of obtaining a restraining order against Fouser, the respondent has made no progress in addressing the concerns of this court expressed at the child's first commitment.
Her home is in shambles, with hypodermic needles all over. She still uses drugs, and shoplifts for funds to buy them. She has sought no counseling, although Highland Heights gave her several references. Highland Heights terminated her joint therapy with the child because the respondent would not participate. She has been incarcerated for her shoplifting and is in danger of being found to be a persistent offender. With the exception of obtaining AFDC aid, she has met none of the provisions of the 1987 agreement with Highland Heights. Nor has she met the expectations of the court as to either commitment. Nor is there any basis to believe that she will be able to assume a responsible position in the life of the child in any reasonable time. The child, as of the date of filing, had been committed for over two and one-half years — some of the most important formative years of her life.
Both grounds have existed for more than a year prior to the filing.
Disposition:
 Based upon facts existing as of the day of the last hearing (March 1, 1990)
Before determining whether it is in the best interest of the child to grant the petition, the court must consider the six factors set forth in subsection (d) or the statute and make findings therein.
A. The timeliness, nature and extent of services offered to parent and child to facilitate reunion.
As set forth, supra, DCYS was involved with the respondent, and child since 1985. After the respondent declined counseling as recommended by the Yale Child Study Center, the child was committed to the Commissioner, and transferred to Highland Heights. Highland Heights has provided therapy to the child since. Further, it has offered referrals to the respondent for counseling which the respondent declined. It further offered therapy with the child at visitations which it withdrew when the respondent declined to participate on a meaningful basis.
B. The terms of any court order entered with and agreed upon by any individual or parent and the extent to which all parties have fulfilled their obligations under the order. CT Page 715
As detailed, supra, there were two such orders — 1) the original expectations approved by Judge Barnett, and (2) the expectations agreed to at the extension of commitment. There was also the agreement between Highland Heights and the respondent of December 1987.
As delineated supra, not only did the respondent fail to fulfill any of such obligations, she further exposed the child to her own criminal behavior, thereby indicating a disrespect for the law. (Testimony of Officer Travisano).
C. The feelings and emotional ties of the child with respect to its parent, any guardian of her person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
Pursuant to court order, the respondent and child were evaluated by Alan M. Shulik, Ph.D., a clinical psychologist. He found that the respondent was a person whose "personality functioning appears to be disordered." She repeatedly denied having any personal problems except the separation from her daughter. In the opinion of the court, this analysis explains why the respondent consistently refused to undertake the therapy advised by the Yale Child Study Center, DCYS and Highland Heights.
In his opinion, the child has emotional ties to her mother, and probably to no one else. However, he is also of the opinion that the respondent "has serious limitations in parenting skills. If Carrie were to be returned to live with her mother, it seems probable that Carrie would regress and develop increased behavioral and emotional problems."
He also voiced the opinion that the child not be returned to the respondent and recommended termination. Such opinion is entitled to great weight. In Re Juvenile Appeal (Anonymous),177 Conn. 648, 667.
D. The age of the child.
The child is eleven years old, DOB 3-16-79.
E. The efforts the parent has made to adjust her circumstances, conduct or conditions to make it in the best interest of the child to be returned to her home in the foreseeable future.
As noted by Dr. Shulik, the respondent is so mentally disorganized that she cannot mend her ways. She doesn't recognize CT Page 716 her problems because her disorganized thought pattern prevents her from doing so. The end result is that the circumstances, conduct and conditions are worse than when the child was committed. As Dr. Shulik noted, the respondent introduced the child to shoplifting. This was deemed by the psychologist as an "admission. . .of a major error in parenting."
Nor is there any indication that there would be any progress in the foreseeable future.
F. The extent to which the parent has been prevented from maintaining a meaningful relationship with the child by anyone or economic circumstances.
The child does have a meaningful relationship with the mother. However, the respondent cannot assume the position of a responsible parent.
The court therefore finds that it is in the best interest of the child that the petition be granted, since the Commissioner has established all of the elements of the statute by clear and convincing evidence.
The court further finds that there is a reasonable probability of adoption for the child.
An order may enter terminating the parental rights of Dorothy Burkle in and to the child, Carrie Burkle, and appointing the Commissioner statutory parent. An adoption plan shall be filed within ninety days.
It is further ordered that trial counsel is hereby appointed appellate counsel for the purpose of filing and prosecuting an appeal. If such counsel, in his professional opinion, shall decline to perfect such appeal because of lack of grounds for such appeal, he is not required to do so. Instead, he shall notify the respondent and the court, and shall file a timely motion to extend the time for appeal and a proper motion to withdraw as counsel. Such motions shall be granted ex parte and the clerk shall thereupon appoint new counsel. Such new counsel shall interview the respondent if practicable, consult with trial counsel, examine the trial record, and conduct such other investigation as he deems necessary to ascertain the merits of an appeal. If such counsel shall then be of the opinion that there is no substantial error he can assign an appeal, he shall so advise the respondent and the court. Such notice to the respondent shall be timely so as to allow an appeal pro se by the respondent or pursue other action. Such second counsel may thereupon file a proper motion to withdraw as counsel. CT Page 717
ROBERT P. BURNS, JUDGE