******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PAMELA BEVILACQUA *v.* JOHN BEVILACQUA
(AC 42518)

Elgo, Moll and Pellegrino, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court
dissolving his marriage to the plaintiff and entering related financial
orders. He claimed that the court abused its discretion in denying his
request for a continuance of the trial, erred by ordering him to pay
periodic alimony to the plaintiff, contrary to the parties' prenuptial
agreement, and erred by awarding certain real property to him in its
distribution order. *Held*:

1. The trial court's denial of the defendant's motion for a continuance of
the trial was not an abuse of discretion; although the delays in the trial
caused by the illness of the defendant's counsel and by the lack of an
available judge were outside of the parties' control, by the time of the
defendant's motion, the matter had been pending for more than 1000
days and involved the custody of minor children, and the defendant's
unsubstantiated claim that he required a continuance because could not
miss additional days of work was unavailing.

2. The trial court properly concluded that the enforcement of the parties'
prenuptial agreement would be unconscionable and properly awarded
the plaintiff alimony; the defendant was responsible for his absence
from the trial, which he claimed prevented him from contradicting the
plaintiff's testimony regarding her capabilities or her employability, and
there was evidence in the record that injuries the plaintiff sustained in
a motor vehicle accident impaired her ability to work full-time and to
achieve the earning capacity she had at the time she signed the prenuptial
agreement, which represented a dramatic change in her financial circum-
stances.

3. The trial court properly determined the ownership and value of certain
real properties and properly awarded those properties to the defendant;
the defendant had listed the properties and assigned values to the proper-
ties in his prenuptial disclosure, there was evidence that the defendant
had received mail regarding the properties from a taxing authority and
the defendant did not appear at trial to challenge his ownership of the
properties, and, because the defendant did not provide the court with
a financial affidavit or other evidence of the value of the properties at
the time of the dissolution, the court properly determined the value of
those properties on the basis of the evidence that was available to it.

Argued September 22—officially released November 10, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Fairfield, and referred to the Regional Family
Trial Docket at Middletown, where the matter was tried
to the court, *Hon. Gerald I. Adelman,* judge trial referee;
judgment dissolving the marriage and granting certain
other relief, from which the defendant appealed to this
court. *Affirmed.*

*John Bevilacqua*, self-represented, the appellant
(defendant).

*John J. Mager*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The self-represented defendant, John Bevilacqua, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Pamela Bevilacqua, and entering related financial orders. On appeal, the defendant claims that the court (1) abused its discretion in denying his request for a continuance of the trial, (2) erred by ordering him to pay periodic alimony to the plaintiff,[1] and (3) erred by awarding certain real property to him in its property distribution order. We affirm the judgment of the trial court.

The following facts and procedural history, as set forth by the trial court in its memorandum of decision or otherwise gleaned from the record, are relevant to the defendant's claims on appeal. The parties were married on August 9, 2003. Prior to their marriage, the parties executed a prenuptial agreement (agreement) that provided that the defendant would not be obligated to pay spousal support in the event of a separation or divorce. After the plaintiff consulted with an attorney, she signed the agreement. The plaintiff also completed a financial affidavit that was attached to the agreement. The defendant similarly completed a financial affidavit in connection with the agreement, in which he disclosed his interest in two pieces of real property in the Bahamas valued at $40,000 and $60,000, respectively. The parties executed the agreement on their wedding day.

The court found that the marriage was troubled from its beginning. The parties have two minor children, who lived almost exclusively with the plaintiff during the pendency of this action. After the birth of the parties' first child, their relationship suffered due to the stresses of young parenthood. In 2005, the plaintiff commenced an action for dissolution of marriage, but she subsequently withdrew that action in an attempt to save the marriage. The parties attended marriage counseling and "were able to enjoy several good years of marriage, during which time their second [child] was born in late 2005."

In 2012, the parties were involved in a motor vehicle accident (accident). As of June, 2015, the plaintiff's treating neurologist diagnosed her as suffering from prolonged post-concussion syndrome caused by a mild traumatic brain injury. As a result of her injuries, the plaintiff has been unable to return to her profession as a teacher. She presently performs clerical work part-time in her brother's chiropractic office. The defendant also was injured in the accident, but his injuries did not affect his ability to remain in his profession as a school counselor. The plaintiff's inability to do certain things as a result of her injuries created significant tension between her and the defendant, and she again commenced a dissolution of marriage action in 2013.

The plaintiff withdrew that second dissolution action for the sake of the parties' children and because "she felt that she had to work to try to save the family relationship." Her efforts were not successful.

The plaintiff commenced the present dissolution of marriage action on November 25, 2015. A three day trial followed, at which both parties were represented by counsel. The defendant, however, did not appear at trial and did not respond to his counsel, who, while the trial was in progress, had attempted to reach him on multiple occasions. As a result, the defendant also failed to file a financial affidavit with the court at the time of trial. Following the trial, the court issued a forty-four page memorandum of decision, ordering, among other things (1) sole custody of the children to the plaintiff, (2) that the defendant pay periodic alimony to the plaintiff, and (3) an award of the Bahamian properties to the defendant. This appeal followed.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties at the hearing. . . . The test is whether the court could reasonably conclude as it did . . . indulging every presumption in its favor. . . . A trial court's conclusions are not erroneous unless they violate law, logic, or reason or are inconsistent with the subordinate facts in the finding." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 420–21, 479 A.2d 826 (1984).

"Review of a trial court's exercise of its broad discretion in domestic relations cases is limited to whether that court correctly applied the law and whether it could reasonably conclude as it did. . . . The trial court must consider all relevant statutory criteria in a marital dissolution action but it does not have to make express findings as to the applicability of each criteria. . . . The trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case." (Citations omitted; internal quotation marks omitted.) *Mathis* v. *Mathis*, 30 Conn. App. 292, 293, 620 A.2d 174 (1993).

"In general the same sorts of [criteria] are relevant in deciding whether [an alimony] decree may be modified as are relevant in making the initial award of alimony. . . . More specifically, these criteria, outlined in [General Statutes] § 46b-82, require the court to consider the needs and financial resources of each of the parties . . . as well as such factors as the causes for the dissolution of the marriage and the age, health,

station, occupation, employability and amount and sources of income of the parties. . . .

"Although financial orders in family matters are generally reviewed for an abuse of discretion . . . this court applies a less deferential standard when the decision of the trial court is based not on an exercise of discretion but on a purported principle of law. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citation omitted; internal quotation marks omitted.) *Rubenstein* v. *Rubenstein*, 172 Conn. App. 370, 375–76, 160 A.3d 419 (2017).

I

The defendant first claims that the court abused its discretion by denying his motion for a continuance of the trial. We disagree.

The following facts are relevant to this issue. The trial originally was scheduled to take place in March, 2018, but it was continued when one of the attorneys fell ill. The matter was continued a second time in August, 2018, due to the lack of an available judge, and it was rescheduled for October 1, 2018. On September 17, 2018, the defendant filed a motion for a continuance of the trial. In that motion, he stated "party not available" and that he "is a high school counselor . . . . He has . . . missed about [thirty] days from work for this matter and cannot miss more days. Case was scheduled for trial in [August] 2018, but was cancelled by the court." The defendant listed a series of dates on which he would be available, each of which corresponded with typical school vacation periods, including Christmas Eve. The court summarily denied the defendant's motion, stating: "No parties present. No counsel present."[2] In its November 27, 2018 decision, the court stated, with respect to the denial of the motion for a continuance, that "[b]ecause the trial had been scheduled since August [2018] and the matter had been pending before the court for over two years, that request . . . was denied."[3]

The defendant argues that the court did not afford him the opportunity to be heard on the motion and that there was nothing in the record to support the court's denial. He relies on this court's decision in *Mensah* v. *Mensah*, 167 Conn. App. 219, 143 A.3d 622, cert. denied, 323 Conn. 923, 150 A.3d 1151 (2016), in which we outlined various factors that a trial court should consider when reviewing a motion for a continuance.[4] The defendant argues that the court ignored those factors, acted arbitrarily and in an abuse of its discretion, and thereby deprived him of his right to participate in the trial and to defend himself.

The plaintiff argues that the defendant's claim is mer-

itless because this matter had been pending for more than 1000 days and involved the custody of two children. The plaintiff states that the defendant provided no evidence in support of his motion that his employment was at risk, and he had two months to get his affairs in order at work so that he could actively participate in the trial.

We begin with our standard of review. "Appellate review of a trial court's denial of a motion for a continuance is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances. . . . An abuse of discretion must be proven by the appellant by showing that the denial of the continuance was unreasonable or arbitrary." (Internal quotation marks omitted.) *Robelle-Pyke* v. *Robelle-Pyke*, 81 Conn. App. 817, 823, 841 A.2d 1213 (2004). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Internal quotation marks omitted.) *O'Connell* v. *O'Connell*, 101 Conn. App. 516, 526, 922 A.2d 293 (2007).

This court has held that it is not an abuse of discretion to deny a motion for continuance in factual circumstances similar to those in the present case. In *In re Juvenile Appeal (85-2)*, 3 Conn. App. 184, 485 A.2d 1362 (1985), the respondent mother appealed from a termination of her parental rights. As part of her appeal, she argued that the trial court's denial of her motion for continuance, predicated on her assertion that she could not leave her place of employment, constituted a violation of due process. Id., 187. The trial court denied the motion "[i]n view of the long pendency of this case, the well-documented notices that were sent of [the] . . . trial dates, and the nature of the reason given for seeking the continuance." (Internal quotation marks omitted.) Id. This court affirmed, concluding that, "[i]n view of the long history of these proceedings and the respondent's minimal economic reason for the continuance, we hold that the . . . trial court's denial of the continuance was well within its discretion." Id., 190.

The trial delays in the present case were outside of the parties' control. Nevertheless, the long pendency of the case was still a proper factor for the court to consider when ruling on the defendant's motion for a continuance of the trial. The defendant's unsubstantiated claim in support of his motion, that he could not miss more days of work, is no more compelling than the respondent's claim in *In re Juvenile Appeal (85-2)*. Accordingly, under these circumstances the trial court did not abuse its discretion in denying the defendant's motion for a continuance of trial.

II

The defendant's second claim is that the court erred by awarding periodic alimony to the plaintiff on holding that enforcement of the parties' prenuptial agreement would be unconscionable. We disagree.

The following facts are relevant to this issue. The agreement provides in relevant part: "Each party hereby waives any right he or she might otherwise have or acquire to seek any alimony or spousal support from the other in any action for a divorce, dissolution of marriage, legal separation or annulment. The parties intend that this waiver shall apply to claims either might otherwise have for temporary or pendente lite alimony or spousal support during the pendency of the action as well as to claims for alimony or spousal support to be awarded in connection with any final judgment in such action." The court concluded that, in light of the injuries the plaintiff suffered as a result of the accident, it is unlikely that she will be able to return to her profession and earn a salary commensurate with her training and experience. The court stated that this created a factual scenario "far beyond the contemplation of the parties when they executed the [agreement]. The fact that . . . the plaintiff cannot earn what she disclosed her income to be in 2003 makes the enforcement of the prohibition to seek spousal support unconscionable."

In support of his claim, the defendant raises two arguments. He first claims that he was not able to provide testimony of his personal knowledge and observations of the plaintiff's capabilities or to offer evidence as to her employability, in violation of § 46b-82. The defendant also argues that the court erred by relying solely on the plaintiff's current employment without any evidence that her earning capacity is limited to such employment due to her health. In response, the plaintiff argues that the defendant's inability to provide testimony was due to his failure to appear at trial, and, in the alternative, that the court properly ordered the defendant to pay alimony because the totality of the evidence demonstrated that the agreement was unconscionable and unenforceable.

Prenuptial agreements are governed by General Statutes § 46b-36a et seq., also known as the Connecticut Premarital Agreement Act. Those statutes codified our Supreme Court's decision in *McHugh* v. *McHugh*, 181 Conn. 482, 485–86, 436 A.2d 8 (1980), which provided that prenuptial agreements "are generally enforceable where three conditions are satisfied: (1) the contract was validly entered into; (2) its terms do not violate statute or public policy; and (3) the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice." With respect to the third prong, which is central to this appeal, General Statutes § 46b-

36g (a) (2) clarifies that "[a] premarital agreement or amendment shall not be enforceable if the party against whom enforcement is sought proves that . . . [t]he agreement was unconscionable when it was executed *or when enforcement is sought . . . .*" (Emphasis added.)

Whether the trial court erred by ordering the defendant to pay alimony to the plaintiff depends on whether it properly determined that the agreement was unconscionable at enforcement. It is well established that "[t]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case. . . . Thus, our [appellate review] is unlimited by the clearly erroneous [or abuse of discretion] standard. . . . This means that the ultimate determination of whether a transaction is unconscionable is a question of law, not a question of fact, and that the trial court's determination on that issue is subject to a plenary review on appeal." (Internal quotation marks omitted.) *Crews* v. *Crews*, 295 Conn. 153, 163–64, 989 A.2d 1060 (2010).

The defendant first claims that the court erred by determining that the prenuptial agreement was unconscionable because he was not able to contradict the plaintiff's testimony at trial. His absence at trial, however, was a matter of his own doing. He moved for a continuance of the trial, provided nothing to the court in support of that motion, and upon receiving the court's denial, he did not explore additional options or communication with the court or even with his attorney, who, during the course of the trial, diligently sought his participation and additional financial information. This court has held that "[w]here a party's own wrongful conduct limits the financial evidence available to the court, that party cannot complain about the resulting calculation of a monetary award." (Internal quotation marks omitted.) *Rosenfeld* v. *Rosenfeld*, 115 Conn. App. 570, 581, 974 A.2d 40 (2009).

The defendant also argues that the court relied "solely on the amount of the plaintiff's current part-time employment without any evidence that her earning capacity is limited to such employment due to health or medical disability," and that "the reports entered into evidence clearly and unambiguously state that the plaintiff is capable of all daily activities . . . ." The report authored by neurologist Thomas Toothaker, however, states that the plaintiff "retained [the] ability to perform all activities *of daily living*," not that the plaintiff was capable of performing all activities in general or those pertaining to full-time employment. (Emphasis added.) Additionally, Toothaker's report highlights several symptoms and issues the plaintiff continued to experience several years after the accident, which he opined were a result of "prolonged post-concussion syndrome as a result of [a] mild traumatic

brain injury."[5] The report from James Connolly, a psychologist, identified similar persistent issues.[6]

In its decision, the court cited *Bedrick* v. *Bedrick*, 300 Conn. 691, 705–708, 17 A.3d 17 (2011). In *Bedrick*, the court held that enforcement of the parties' postnuptial agreement would have been unconscionable because the financial circumstances of the parties had changed dramatically since the agreement was modified. Id., 706–708. Specifically, the court concluded that the fact that the parties had had a child together and that the husband's business had alternately prospered and deteriorated during the marriage constituted a sufficient change in their financial circumstances to render the agreement unconscionable and unenforceable. Id., 707–708.

The standards for determining whether prenuptial or postnuptial agreements are unconscionable at enforcement are analogous: "[T]he question of whether enforcement of a *prenuptial* agreement would be unconscionable is analogous to determining whether enforcement would work an injustice. . . . Thus, the trial court's finding that enforcement of the *postnuptial* agreement would work an injustice was tantamount to a finding that the agreement was unconscionable at the time the defendant sought to enforce it."[7] (Citation omitted; emphasis added.) Id., 707–708.

In the present case, there was evidence in the record that the accident impaired the plaintiff's ability to work full-time and, as a result, she was forced to obtain part-time employment at a salary far lower than the one she earned at the time the agreement was executed. Additionally, with the exception of several selectively chosen excerpts from the expert reports in evidence, the defendant cites to no evidence contradicting the plaintiff's position. In light of the plaintiff's injuries and her reduced earning capacity, we conclude, on the basis of our review of the law and record, that the court properly concluded that enforcement of the agreement would be unconscionable, and that it properly awarded the plaintiff alimony.

## III

The defendant's last claim is that the court improperly awarded him two pieces of real property in the Bahamas. We disagree.

The following facts are relevant to this issue. With respect to the defendant's ownership interest in the two Bahamian properties, the court determined that "[t]here was no clear testimony as to whether said properties were owned by the defendant." Although the properties were included among the defendant's assets disclosed in connection with the agreement, he denied ever owning any property in the Bahamas during his deposition for the dissolution matter. The plaintiff, however, offered two letters from the Bahamian taxing authority

that were mailed to the defendant's aunt on December 21, 2017, "in care of [the defendant]." The court concluded that the "evidence strongly suggests that the defendant has been less than candid about any ownership interest he may have in real estate in the Bahamas" and that "[h]is deposition testimony . . . is replete with vague answers and incomplete information and certainly places his credibility in question." Thus, the court awarded those two properties to the defendant, and valued them at $40,000 and $60,000 respectively— the same value the defendant had provided for them on his prenuptial disclosure.

In support of his claim on appeal, the defendant argues that (1) the court was not provided with any certified deeds or instruments that established his ownership of the Bahamian properties, and (2) the court should have applied the "long settled principle" in this state that property is valued as of the date of dissolution. We do not agree.

This court "will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion . . . we allow every reasonable presumption in favor of the correctness of its action . . . . Furthermore, [t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) *Powers* v. *Hiranandani*, 197 Conn. App. 384, 394–95, 232 A.3d 116 (2020).

With respect to ownership of the Bahamian properties, the court awarded those properties to the defendant on the basis of his prenuptial financial disclosure and the letters from the Bahamian taxing authority. The defendant never provided the court with evidence of a transfer of ownership of the properties, and he did not appear at trial to contradict the plaintiff's evidence or otherwise challenge his ownership of the properties. Accordingly, the court did not err by awarding him those properties.

With respect to valuation, the value assigned to property in a dissolution proceeding should generally be calculated at the time of dissolution. See id., 407. In the present case, however, the defendant did not provide the trial court with a financial affidavit. In a dissolution proceeding, both parties "are required to itemize all of their assets in a financial affidavit and to provide the court with the approximate value of each asset." (Internal quotation marks omitted.) Id.

In *Powers*, the defendant did not provide the court with the value of certain real property on his financial affidavit. As a result, the trial court relied on testimony and other financial affidavits to determine the value of

the property in dispute. Id., 406–407. On appeal to this court, the *Powers* defendant argued that the trial court abused its discretion by "equitably distributing property between parties without properly determining the value of the real property." (Internal quotation marks omitted.) Id., 406. This court rejected that argument and held that if parties fail to provide the approximate value of each asset on their financial affidavits in a dissolution proceeding, then "*the equitable nature of the proceedings precludes them from later seeking to have the financial orders overturned on the basis that the court had before it too little information as to the value of the assets distributed.*" (Emphasis in original; internal quotation marks omitted.) Id., 407. Accordingly, this court concluded that, without evidence of the value of the disputed property, the trial court did not abuse its discretion. Id., 408. The same is true in the present case.

We therefore conclude that the trial court properly determined the ownership and value of the Bahamian properties on the basis of the evidence that was available to it.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant phrases his second claim differently, arguing that the "court erred in failing to establish and quantify the plaintiff's earning capacity in fashioning financial orders, resulting in a finding of 'unconscionability' of the parties' prenuptial agreement." The effect of that unconscionability holding, however, was that the court awarded the plaintiff alimony that would otherwise have been precluded by the parties' prenuptial agreement.

[2] Although the defendant takes issue with this language, we note that it is boilerplate language available, when applicable, in the judges' order entry system.

[3] The court also stated: "As of the start of the trial, this matter had been pending for over 1000 days. The court makes every effort to resolve custody matters within the first year after filing . . . . This matter has been on the docket . . . for nearly three times the normal length of most cases. . . . It is crucial that the matter be resolved as soon as possible. Whenever custody is in dispute, the court views the children involved as being at risk. A resolution and a stable parenting situation are necessary to eliminate such a risk."

[4] "Among the factors that may enter into the court's exercise of discretion in considering a request for a continuance are the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the [movant's] personal responsibility for the timing of the request . . . ." (Internal quotation marks omitted.) *Mensah* v. *Mensah*, supra, 167 Conn. App. 223.

[5] Toothaker's report identifies the plaintiff's symptoms as "continued pressure-like headaches and cognitive issues" and "forgetting what she was saying and difficulty helping with her children's homework" and further notes that "her neuropsychological evaluation was intact except for some variable performance with executive functioning and visual memory which were . . . consistent with post-concussion syndrome"; "she would become easily distressed and feel overwhelmed"; she had "difficulty with concentration and multitasking"; and she was still suffering from tension and migraine headaches and fatigue.

[6] Connolly's evaluation identifies the plaintiff's symptoms as "memory difficulties, headache and nausea"; "feelings of confusion"; "some ongoing level of mild impairment"; "[somewhat elongated] processing time on . . . tests and answering some questions"; "occasional irritability"; "anxiety and depression"; and "difficulties concentrating and problems with becoming easily fatigued."

[7] In *Bedrick*, the court articulated the test for enforceability predicated on both § 46b-36g and the three-part test set forth in *McHugh* v. *McHugh*, supra, 181 Conn. 485–86. The third prong of that test—whether "the circumstances of the parties at the time the marriage is dissolved [are] so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice"; id.—informed the court's conclusion that "the question of whether enforcement of a prenuptial agreement would be unconscionable is analogous to determining whether enforcement would work an injustice." *Bedrick* v. *Bedrick*, supra, 300 Conn. 707.

---