ROBERT ROBELLE-PYKE *v.* ALEXA ROBELLE-PYKE
(AC 23848)

Foti, Schaller and West, Js.

Argued January 16—officially released March 9, 2004

*David P. Burke*, for the appellant (defendant).

*William R. Donaldson*, with whom was *Christopher P. Norris*, for the appellee (plaintiff).

*Opinion*

FOTI, J. In this appeal from the judgment of dissolution of the parties' marriage, the defendant, Alexa Robelle-Pyke, claims that the trial court improperly (1) denied her motions for a continuance to allow her treating psychiatrist to testify at trial regarding claimed severe depression, (2) ruled on her application for a guardian ad litem to protect her interests, (3) denied her motion for a continuance to secure evidence relative to the present value of the plaintiff's pension and (4) entered financial orders. We agree with the defendant's first claim and, therefore, reverse the judgment of the trial court.

The record discloses the following relevant facts and procedural history. The action was commenced on May 21, 2001. On August 27, 2002, a case management agreement was submitted stating that the matter would be limited contested.[1] On December 23, 2002, counsel for the defendant received notice that the matter had been assigned for trial on January 2, 2003. A motion for a continuance, filed by the defendant on December 24, 2002, was denied by the court, *Bozzuto, J.*, on the same day. The motion noted that (1) the defendant had been diagnosed as suffering from major depression, (2) Elizabeth Taylor, a board certified psychiatrist and the defendant's treating psychiatrist, would be testifying as to the defendant's mental health at trial, (3) Taylor, who practices psychiatry in Indiana, had left the country on vacation and was due to return on January 7, 2003, (4) counsel, because of the defendant's mental condition, would find it difficult to prepare for trial on the issue of mental health and (5) the motion for the appointment of a guardian ad litem for the defendant was pending, but unresolved.[2]

---

[1] A previous case management agreement, filed on January 4, 2002, stated that the matter was to be ready for the uncontested trial list.

[2] The motion was filed on behalf of the defendant on October 10, 2002, and stated in relevant part: "Defendant, Alexa B. Robelle Pyke, pursuant to Section 45a-132 of the Connecticut General Statutes, moves for the appointment of a guardian ad litem to protect her interests with respect to this matter, and, as grounds [therefor], represents as follows:

"1. On June 6, 2002, Defendant was diagnosed as suffering from 'Major depression, severe and chronic' by Elizabeth Taylor, M.D. In rendering this diagnosis, Dr. Taylor utilized the diagnostic criteria of the *Diagnostic and Statistical Manual of Mental Disorders* published by the American Psychiatric Association.

"2. Dr. Taylor is a psychiatrist licensed to practice in the State of Indiana, and certified in Psychiatry/Neurology by the American Board of Psychiatry/ Neurology. Defendant has been treating with Dr. Taylor since June 6th in Evansville, Indiana, where Defendant now resides and where Dr. Taylor's practice is located. A copy of Dr. Taylor's June 6, 2002 note is attached hereto as Exhibit A.

"3. On July 29, 2002, Dr. Taylor was deposed in this matter. On that occasion, she testified to her ongoing evaluation, care and treatment of Defendant. Dr. Taylor said that when she had seen Defendant on July 11th,

she was 'just barely functioning from day to day. She is still very hopeless and helpless and feels very worthless, and I just don't think that she feels competent to do, you know, even minimal things.' July 29, 2002 deposition of Elizabeth Taylor, M.D., at 36. A copy of the transcript of this testimony is attached hereto as Exhibit B. When asked if defendant would have been able to travel to Connecticut for a [pendente] lite alimony hearing in this matter, Dr. Taylor testified that Defendant would not have been able to travel to Connecticut or participate in the hearing. Id., at 37. By way of explanation for Defendant's mental incapacities, Dr. Taylor described the chemical imbalances that occur in the neurotransmitters of the brain of a person suffering from major depression, and how those chemical imbalances effect, inter alia, 'energy, thought processes, ability to make [decisions . . . .' Id., at 19].

"4. At her July 29th deposition, Dr. Taylor was also asked the following questions and provided the following answers:

"Q. At this point, Doctor, based on the history and your evaluation of Alexa, do you have an opinion as to her condition to a reasonable degree of medical certainty in terms of a diagnosis?

"A. I would—I would agree with my initial diagnosis that she still suffers from major depressive disorders, severe and chronic. I think it's very resistant to treatment. That could be due to multiple factors that would be determined in the future.

"What her prognosis is other than guarded at this time, I can't really say because I haven't seen her that long and, as far as her response to medication, it's been very slow to this point.

"Q. Do you have any sense of when you will be able to develop a prognosis for her?

"A. More than that. Hopefully, after I see her a couple more times. The problem is then when improvement is this slow over the month and a half that I've been seeing her, then it takes longer to see what the end point might be.

"Q. Okay. At this point, do you have any opinion as to whether or not she is capable of attending to her own affairs?

"A. I think minimally. I think she—she is to the point where she is functioning on a day-to-day basis. I think she—she—I think she does take care of her basic finances. But I think her functioning is pretty minimal at this point.

"Q. Do you have an opinion as to whether or not she is capable of forming meaningful plans with respect to her future?

"A. At the last date that I saw her, definitely not. Hopefully, in the future with the new medications, there is some hope for that, but—

"Q. But at this—

"A.—at this point, I can't—no, she didn't. She doesn't have that ability.

"Q. All right. Do you have an opinion to a reasonable degree of medical probability as to whether or not she is capable of making decisions regarding the process of this divorce case?

"A. I would say that would be very minimal at this point. Dr. Taylor transcript, at 45–47. A copy of the transcript of these pages is attached hereto as Exhibit B.

On January 2, 2003, the defendant renewed her motion for a continuance, setting forth the identical reasons as in her written motion and noting that her mental health was a criterion that the court was statutorily obligated to consider. In pursuing the motions for a continuance and for the appointment of a guardian ad litem, the defendant read excerpts from a video deposition of Taylor.[3]

The court, *White, J.*, denied the motion for a continuance and the motion for the appointment of a guardian

"5. On September 12, 2002, the undersigned spoke with Dr. Taylor to inquire about Defendant's present condition. Dr. Taylor informed the undersigned that, although she thought that Defendant was improving, she did not presently believe that Defendant was capable of meaningful participation in this matter. She said that she was to see Defendant again on September 19th at which time should would reassess the situation.

"6. On September 20th, the undersigned again spoke with Dr. Taylor regarding the September 19th visit with Defendant. Dr. Taylor said that Defendant sobbed through the entire session. Dr. Taylor asked if defendant would have had to have participated in the Special Masters' Conference that had been scheduled for September 20th. When I said that she would have been required to participate if it had gone forward, Dr. Taylor said that there was 'no way that Alexa could even get from Indiana to Connecticut.' She said that she could not have participated in any meaningful way. Dr. Taylor also stated that, when the subject of the divorce comes up in session, Defendant repeatedly states that she does not know what to do about the divorce.

"7. Based on the foregoing, Defendant does not have the ability to presently communicate in any meaningful and knowing way with the undersigned with respect to the resolution of this case, nor is it likely that Defendant will be able to meaningfully participate in this matter any time in the near future."

[3] The excerpts presented, inter alia, showed Taylor's testimony as to the *defendant's condition*:

"[The Witness]: I think she's just barely functioning day to day. She's just out of the suicidal range. She is still very hopeless and helpless and feels very worthless, and I don't think she feels competent to—to do, you know, even minimal things.

"[The Defendant's Counsel]: At this point, doctor, based on the history and your evaluation of [the defendant], do you have an opinion to a reasonable degree of medical certainty in terms of diagnosis?

\* \* \*

"[The Witness]: I would. I would agree with the initial diagnosis that she suffers from major depressive disorders, severe and chronic. I think it's

ad litem, concluding that no persuasive evidence had been presented that the defendant was not competent.

Following the plaintiff's testimony, the defendant took the witness stand and acknowledged that (1) she was taking four medications, Remeron, Zyprexa, Klonopin and Xanax, (2) they were prescribed by Taylor, (3) she did not know whether they would affect her ability to testify, and (4) they did affect her memory and ability to focus. Following the defendant's completed testimony, the offer was made to submit a transcript of Taylor's video deposition, together with medical records. Following the submission, the defendant sought a continuance to update Taylor's evaluation, which was about six months old. The request was denied.

The transcript[4] reveals that the court found that "[t]he [defendant] is suffering from clinical depression. She's under treatment. She's willing to get better and making

very resistant to treatment that could be due to multiple factors that would be determined in the future. What her prognosis is other than [guarded] at this time, I really can't say because I haven't seen her . . . that long. And as far as her response to medication, it has been very slow to this point.

\* \* \*

"[The Defendant's Counsel]: At this point, do you have an opinion as to whether or not she's capable of attending to her own affairs?

"[The Witness]: I think minimally. I think she is . . . to the point where she is functioning on a day-to-day basis. I think she . . . does take care of her basic finances, but I think her functioning is pretty minimal at this point.

"[The Defendant's Counsel]: Do you have an opinion as to whether or not she is capable of forming meaningful plans with respect to her future?

"[The Witness]: At the last date I saw her, definitely not. Hopefully, in the future, with new medications, there is some hope for that. But at this point, I can't—no, she didn't. She doesn't have that ability.

"[The Defendant's Counsel]: Do you have an opinion with a reasonable degree of medical probability as to whether or not she is capable of making decisions regarding the process of this divorce case?

"[The Witness]: I would say that would be very minimal at this point."

[4] The record does not contain a written memorandum of decision or a signed transcript. The transcript, however, adequately reveals the basis of the court's decision for purposes of our review.

efforts to do so and is able to manage her daily affairs. In fact, [the court found], from her testimony, on the stand, that she—her thought process is organized and she seems to be oriented as to time, and she seems to understand the responsibility she has. And she's employed currently as a cashier at a Barnes and Noble in the state of Indiana."

"At the outset, we note our standard of review. A trial court holds broad discretion in granting or denying a motion for a continuance. Appellate review of a trial court's denial of a motion for a continuance is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances. . . . An abuse of discretion must be proven by the appellant by showing that the denial of the continuance was unreasonable or arbitrary." (Internal quotation marks omitted.) *Marshall* v. *Marshall*, 71 Conn. App. 565, 574, 803 A.2d 919, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002).

A party's health is one of the statutory criteria that must be considered in the court's exercise of its broad discretion in awarding alimony; General Statutes § 46b-82; and distribution of assets; General Statutes § 46b-81. "Once the defendant put[s] her health in issue, it [is] incumbent on her to offer pertinent evidence to support her position." *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 27, 783 A.2d 1157 (2001).

The record clearly reflects that the defendant's chronic and severe depression disorder was an issue and that the plaintiff was aware of it,[5] and also that the matter had not previously been scheduled for trial.[6]

---

[5] On October 4, 2002, the plaintiff filed a motion for physical and mental examination, pendente lite, seeking an order to compel the defendant to submit to appropriate examinations, as "the [d]efendant places her mental capacity in question by the presentation of statements of her current psychiatrist obtained during a deposition."

[6] The record does not reflect that the matter had been subjected to a judicial pretrial or been through the masters conference process.

There is nothing in the record to reflect that any prejudice would have occurred if a continuance had been granted to allow Taylor time to return from vacation and appear to testify. Under the particular circumstances of this case, the defendant requested a continuance to provide the court with what she claimed was essential medical testimony crucial to an evaluation of her health, which also necessarily implicated her employability, and may have been "pertinent evidence to support her position"; id.; regarding her health. A party should be entitled to present evidence relevant to an issue to be determined by the court; the court is free to give whatever weight it deems proper to that evidence. Under those circumstances, it was an abuse of discretion for the court to have denied the defendant's requests for a continuance.[7]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[7] Because we have concluded that it was an abuse of discretion to deny the continuance, it is unnecessary to address the defendant's remaining claims.