CHARLES W. FISH *v.* ANNE IGOE
(AC 24008)

Dranginis, West and McLachlan, Js.

Argued February 25—officially released June 15, 2004

*Charles W. Fish,* pro se, the appellant (plaintiff).

*Maureen D. Regula,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Eliot D. Prescott,* assistant attorney general, for the department of social services.

*Opinion*

WEST, J. The plaintiff, Charles W. Fish, appeals pro se from the judgment of the trial court affirming the family support magistrate's denial of his motion to modify an order to pay child support.[1] On appeal, the plaintiff claims that (1) the Superior Court did not have jurisdiction to modify a child support order originally rendered in Massachusetts, (2) the family support magistrate, *Susan S. Reynolds,* improperly retried issues that already had been decided by a Massachusetts court, (3) the trial court improperly failed to consider additional evidence pursuant to General Statutes § 46b-231 (n) (5) and (4) the trial court improperly affirmed the family support magistrate's December 16, 2002 order denying his motion to modify the child support order and deviating from the presumptive amount of child support. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the issues on appeal. The parties were divorced in Massachusetts on June 6, 1996, and have joint legal custody of their two minor children. The defendant moved with the children to New York in 1994, and the plaintiff moved to Connecticut in 1996.

---

[1] We note at the outset that the department of social services, which sought to enforce and modify the child support order on behalf of the defendant, filed an appellee's brief. The defendant, Anne Igoe, did not file a brief.

The issue of child support originally was decided by the Massachusetts Probate and Family Court on November 20, 1996, which ordered the plaintiff to pay the defendant $150 per week. The defendant presented the judgment to the Connecticut Superior Court on October 20, 1997, and it was registered, over the plaintiff's objection, under the Uniform Interstate Family Support Act (UIFSA).[2] The parties filed cross motions to modify the order. On January 30, 2001, Magistrate Reynolds modified upward the child support payments to $252.28 per week. The trial court, *Shay, J.*, affirmed the magistrate's order on March 19, 2001. The plaintiff did not appeal from the court's judgment.

On October 7, 2002, the plaintiff filed his own motion to modify the child support order of $252.28 per week. On December 16, 2002, the family support magistrate, *John P. McCarthy*, denied the motion. On December 26, 2002, the plaintiff filed an application to present additional evidence on appeal to the trial court pursuant to § 46b-231 (n) (5). The trial court held a hearing on January 27, 2003, with regard to the plaintiff's motion for modification and application to present additional evidence. On February 20, 2003, the court denied the application to present additional evidence and affirmed the magistrate's decision. The plaintiff's appeal from that judgment is now before this court.

I

The plaintiff first claims that the Superior Court lacked jurisdiction to modify a child support order originally rendered in Massachusetts. He challenges the jurisdiction of Magistrate Reynolds to modify upward the child support payments to $252.28 per week and the jurisdiction of the subsequent family support magistrate to deny his motion to modify on December 16, 2002. Specifically, he argues that written consent was

---

[2] General Statutes § 46b-212 et seq.

required from both parties to give Connecticut jurisdiction to modify the child support order. We disagree.

We note the standard of review. "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . [A] lack of subject matter jurisdiction can be raised at any time and cannot be waived by either party." (Citation omitted; internal quotation marks omitted.) *Bojila* v. *Shramko*, 80 Conn. App. 508, 512, 836 A.2d 1207 (2003).

In this case, the child support order, originally rendered in Massachusetts, was registered in Connecticut under UIFSA. As a consequence, we look to General Statutes § 46b-213q (a),[3] which governs the modification of a child support order from another state. Section 46b-213q (a) (1) and (2) set forth alternate ways to confer jurisdiction on a Connecticut family support magistrate to modify a child support order issued in another state. In this case, the three requirements of § 46b-213q (a) (1) were satisfied with respect to the January 30, 2001 modification. Pursuant to subdivision (2) of the statute, a dual filing of written consent is merely an alternate way to modify an out-of-state child support order. Consequently, we conclude that the family support magistrate had jurisdiction to modify the child support order on January 30, 2001.

---

[3] General Statutes § 46b-213q (a) provides in relevant part: "After a child support order issued in another state has been registered in this state, a family support magistrate may modify that order only if . . . after notice and hearing, such magistrate finds that: (1) The following conditions are met: (A) The child, the individual obligee and the obligor do not reside in the issuing state; (B) a petitioner who is a nonresident of this state seeks modification; and (C) the respondent is subject to the personal jurisdiction of the Family Support Magistrate Division; *or* (2) . . . all of the parties who are individuals have filed written consents in the issuing tribunal for a family support magistrate to modify the support order and assume continuing exclusive jurisdiction over the order . . . ." (Emphasis added.)

Section 46b-213q (d)[4] settles the plaintiff's other juris-
dictional argument. Once the original order was modi-
fied in Connecticut on January 30, 2001, the family
support magistrate had continuing, exclusive jurisdic-
tion to decide the plaintiff's subsequent motion to mod-
ify the child support order on December 16, 2002.
Accordingly, the plaintiff's subject matter jurisdiction
claim fails.

## II

The plaintiff next claims that the family support mag-
istrate improperly retried issues that already had been
decided by the Massachusetts court. Specifically, he
argues that the doctrine of res judicata precluded Magis-
trate Reynolds from making findings of fact regarding
his living expenses in conflict with those made pre-
viously by the Massachusetts court. We disagree.

Ironically, the doctrine of res judicata precludes our
consideration of the plaintiff's res judicata claim. "The
applicability of res judicata raises a question of law that
is subject to our plenary review. . . . The doctrine of
res judicata holds that an existing final judgment ren-
dered upon the merits without fraud or collusion, by a
court of competent jurisdiction, is conclusive of causes
of action and of facts or issues thereby litigated as to
the parties . . . in all other actions in the same or any
other judicial tribunal of concurrent jurisdiction. . . .
If the same cause of action is again sued on, the judg-
ment is a bar with respect to any claims relating to the
cause of action which were actually made or which
might have been made." (Citation omitted; internal quo-
tation marks omitted.) *Rathblott* v. *Rathblott*, 79 Conn.
App. 812, 821, 832 A.2d 90 (2003).

[4] General Statutes § 46b-213q (d) provides: "On issuance of an order modi-
fying a child support order issued in another state, the Family Support
Magistrate Division becomes the tribunal of continuing exclusive juris-
diction."

We note at the outset that the plaintiff never appealed from the trial court's March 19, 2001 judgment affirming the family support magistrate's January 30, 2001 modification of the child support order. The plaintiff now asks this court, on appeal from the denial of his October 7, 2002 motion for modification, to consider an issue relating to the first modification hearing. The plaintiff, in effect, wants to use this appeal as an opportunity to relitigate an issue pertaining to a past proceeding. "The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 422–23, 752 A.2d 509 (2000). Accordingly, the plaintiff is precluded from asserting claims regarding Magistrate Reynolds' January 30, 2001 decision modifying the child support order or the trial court's judgment affirming that decision on March 19, 2001.

### III

The plaintiff next claims that the trial court improperly denied his December 26, 2002 application to present additional evidence that he was allegedly unable to introduce at the hearing before Magistrate McCarthy. Section 46b-231 (n) (5)[5] allows an aggrieved party to present additional evidence to the trial court on appeal from a final decision of a family support magistrate. The plaintiff's brief provides scant analysis of that issue, but apparently he argues that if the family support magistrate had afforded him an adequate opportunity to

---

[5] General Statutes § 46b-231 (n) (5) provides: "If, before the date set for hearing, application is made to the Superior Court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the family support magistrate, the Superior Court may permit additional evidence [to] be taken before it upon conditions determined by the court."

prepare for an *Unkelbach*[6] hearing, to determine whether he had received regularly recurring contributions or gifts from his current spouse, then he would have been able to present allegedly material evidence,[7] most of which concerned financial circumstances surrounding the time of the original support order rendered in Massachusetts. We disagree.

We note the standard of review. "[A] trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . Evidentiary

[6] See *Unkelbach* v. *McNary*, 244 Conn. 350, 365, 710 A.2d 717 (1998), in which our Supreme Court held that "gross income," as defined by the child support and arrearage guidelines, and set forth at § 46b-215a-1 (11) of the Regulations of Connecticut State Agencies, included the contributions and gifts of the defendant's domestic partner toward his living expenses. It is important to note that subsequent to the Supreme Court's ruling in *Unkelbach*, the guidelines were revised in November, 1999, to exclude the "regularly recurring contributions or gifts of a spouse or domestic partner" as part of the definition of "gross income." The criteria for deviation from the guidelines was also expanded in November, 1999, however, to include "the regularly recurring contributions or gifts of a spouse or domestic partner" under § 46b-215a-3 (b) (1) (D). After the November, 1999 revisions to the guidelines, therefore, an "*Unkelbach* hearing" has been limited to an examination of the regular contributions and gifts of a spouse or domestic partner to determine whether a deviation from the presumptive amount of child support is proper, as the family support magistrate did in this case. As Magistrate McCarthy recognized in his December 16, 2002 oral decision: "What the commission did—there's a commission that meets. There are various members, and they make these guidelines. They decided that *Unkelbach* would only be a deviation criteria. They didn't want to make it the law."

[7] The plaintiff sought to present the following additional evidence to the court: (1) his affidavit from the time of the original support order; (2) the defendant's affidavit from the same time; (3) a transcript from Magistrate Reynolds' "fictitious income statement"; (4) the Massachusetts support order; (5) his most recent pay stub from the town of Darien; (6) an accounting of paid child support; (7) Massachusetts child support guidelines; (8) a New York order for counseling; (9) an "orthodontia" bill; and (10) "[p]revious extraordinary" out-of-pocket expenses.

rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [plaintiff] of substantial prejudice or injustice." (Internal quotation marks omitted.) *Bugryn* v. *Bristol*, 63 Conn. App. 98, 111, 774 A.2d 1042, cert. denied, 256 Conn. 927, 776 A.2d 1143, cert. denied, 534 U.S. 1019, 122 S. Ct. 544, 151 L. Ed. 2d 422 (2001).

"General Statutes § 46b-86[8] governs the modification or termination of an alimony or support order after the date of a dissolution judgment." *Borkowski* v. *Borkowski*, 228 Conn. 729, 734, 638 A.2d 1060 (1994). "A final order for child support may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances." (Internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 11, 787 A.2d 50 (2001).

"To obtain a modification, the moving party must demonstrate that circumstances have changed *since the last court order* such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the

---

[8] General Statutes § 46b-86 (a) provides in relevant part: "[A]ny final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ."

order to some distinct and definite change in the circumstances or conditions of the parties." (Citations omitted; emphasis added.) *Borkowski* v. *Borkowski*, supra, 228 Conn. 737–38.

The evidence the plaintiff sought to introduce to the trial court for consideration at the January 27, 2003 hearing was immaterial. Evidence of financial circumstances from the time of the original child support order rendered in Massachusetts simply had no bearing on the family support magistrate's task on December 16, 2002. On October 7, 2002, the plaintiff filed a motion to modify the child support order *as modified on January 30, 2001*. It must be noted that the original child support order of $150 per week was subsequently replaced by the January 30, 2001 final order to increase the child support payments to $252.28 per week.

At the December 16, 2002 hearing on the plaintiff's motion for modification before Magistrate McCarthy, the only evidence within the scope of that motion pertained to the time period between January 30, 2001, the date on which the child support order was last modified, and December 16, 2002. Magistrate McCarthy made that point clear to the plaintiff at the hearing: "And now tell me, sir, since January [30], 2001, what has happened to your earning capacity to your jobs, to your—you know, what has changed since then?" Accordingly, we conclude that the court acted well within its discretion by deciding not to consider the plaintiff's additional evidence under § 46b-231 (n) (5).

IV

The plaintiff next claims that the trial court improperly affirmed Magistrate McCarthy's December 16, 2002 order denying his motion to modify the child support payments of $252.28 per week and deviating from the

presumptive child support amount.[9] Specifically, he argues that the family support magistrate improperly deviated from the presumptive amount of child support without meeting the requirements to do so as set forth in § 46b-215a-3 (a) of the Regulations of Connecticut State Agencies. He further argues that Magistrate McCarthy improperly considered the assets of the plaintiff's current wife in deviating from the presumptive amount. We disagree.

We note the standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 282–83, 752 A.2d 1023 (1999).

"A final order for child support may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances." (Internal quotation marks omitted.) *Prial* v. *Prial*, supra, 67 Conn. App. 11.

[9] The department of social services, which filed an appellee's brief in this appeal; see footnote 1; argues that res judicata precludes the parties from relitigating Magistrate Reynolds' January 30, 2001 decision to deviate from the presumptive child support amount and modify upward the child support order. Magistrate McCarthy's December 16, 2002 oral decision denying the plaintiff's motion to modify, however, represents an independent decision to deviate from the presumptive amount in a separate proceeding:

"The Court: You know, you're driving a 2001 automobile, you have the benefit of living in a $2 million house; could be $900,000, perhaps it could be $2 million. You pay virtually no real estate taxes, no utilities, and you listed food, gas [and] no repairs because you have a fairly new automobile. And, so, based on that, I'm going to deviate and make it—I think it's reasonable to leave it at the $252.28, and that's what I'm going to do."

Section 46b-215a-3 (a) of the Regulations of Connecticut State Agencies provides in relevant part that "[t]he current support, health care coverage contribution, and child care contribution amounts calculated under section 46b-215a-2a of the Regulations of Connecticut State Agencies . . . are presumed to be the correct amounts to be ordered. . . ." Section 46b-215a-3 (a) also provides, however, that "[t]he presumption regarding each such amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case. Any such finding shall state the amount that would have been required under such sections and include a justification for the variance. . . ." Pursuant to § 46b-215a-1 (11) (B) (iv), "the income and regularly recurring contributions or gifts of a spouse or domestic partner" are excluded from the calculation of "gross income" under the guidelines. Section 46b-215a-3 (b) (1) (D), however, permits a deviation from the presumptive child support amount for "the regularly recurring contributions or gifts of a spouse or domestic partner, but only if it is found that the parent has reduced his or her income or has experienced an extraordinary reduction of his or her living expenses as a direct result of such contributions or gifts."

In his December 16, 2002 oral decision on the plaintiff's motion for modification, Magistrate McCarthy cited all of the requirements listed in § 46b-215a-3 (a) to justify deviating from the presumptive amount of child support.[10] At the hearing, Magistrate McCarthy

---

[10] The transcript indicates that the following discussion occurred between the plaintiff and the family support magistrate at the December 16, 2002 hearing, as Magistrate McCarthy explained why he deviated from the presumptive amount of child support:

"The Court: In your case, you live without paying very much of a mortgage or a real estate tax. You pay, you told me, a total of $500 a month, whereas people in your like circumstances would pay a lot more. Why? Because of what the law calls regularly recurring gifts of your spouse.

"[The Plaintiff]: Um-hmm.

"The Court: You have no note or no documentation to show me that you owe your wife $68,000, and your own financial affidavit shows me how little

explained the guidelines to the plaintiff, noted the presumptive amount, and explained why applying that amount would be inequitable and inappropriate in this case. Magistrate McCarthy justified imposing a deviation on the basis of the extraordinary reduction in the plaintiff's living expenses as a result of the regularly recurring contributions and gifts the plaintiff had received from his current spouse.

There was ample evidence in the record to support the deviation from the presumptive amount of child support and the denial of the plaintiff's motion to modify downward the child support order. See footnote 10. Magistrate McCarthy properly ignored the income of the plaintiff's current spouse and whatever regularly recurring contributions and gifts she gave the plaintiff in determining the plaintiff's gross income. It was proper,

you pay. Not counting child support, you pay less than $300 a week in living expenses. Your mortgage, if it were cut in half, would be $1450 a month. I mean, I'm just saying that hypothetically.

"[The Plaintiff]: Um-hmm.

"The Court: Your taxes, if cut in half, would be $500 a month. So, I think, based on *Unkelbach* v. *McNary*, 244 Conn. 350, 710 A.2d 717 (1998), it's fair to say that you have not met the requirements for a motion to modify. Your income presumptively is what you state it is. And it is as per the guidelines. Do you have those, madam?

"[The Clerk]: Yes.

"The Court: Now, this is another language or word of art, so to speak. The presumptive amount would be $156, based on your income and your ex-wife's income. But I'm going to deviate because to do otherwise would be inequitable and inappropriate.

"[The Plaintiff]: But what are the findings on record that it would be— that the presumptive amount would be unfair and unequitable? Why would that be, based on my income and my—

"The Court: Okay. I'm basing it on this. I'll state it again: You are the recipient of regularly recurring gifts from your spouse.

"[The Plaintiff]: But they don't represent a financial resource to me. My understanding from the preamble in page v in the II section is that that gift has to represent a financial resource. In the *Unkelbach* case—

"The Court: But they do, sir. They—

"[The Plaintiff]: In the *Unkelbach* case—

"The Court: They put you—let me just tell you what I said before, they put you in a superior position to people in your place in life or circumstance."

however, to examine those regular contributions and gifts to decide whether a deviation from the presumptive amount of child support was necessary in this case.

We therefore conclude that the trial court acted well within its discretion by affirming the family support magistrate's decisions to maintain the child support payments at $252.28 per week, to deviate from the presumptive child support amount and to deny the plaintiff's motion to modify the child support order.

The judgment is affirmed.

In this opinion the other judges concurred.