CHRISTINE M. COTE *v.* MICHAEL A. MACHABEE
(AC 25059)

Lavery, C. J., and Dranginis and McLachlan, Js.

Argued November 30, 2004—officially released February 22, 2005

*Greg S. Krieger,* for the appellant (defendant).

*Ralph J. Monaco,* for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. In this action to recover damages for injuries suffered in a motor vehicle accident, the defendant, Michael A. Machabee, appeals from the judgment of the trial court rendered in favor of the plaintiff, Christine M. Cote.[1] The defendant claims that the court improperly denied (1) his motion to preclude certain of the plaintiff's medical records, (2) his motion for a continuance and (3) his motion to set aside and remit the jury's verdict. We affirm the judgment of the trial court.

On July 6, 2001, the parties were involved in a motor vehicle accident in Griswold. In an amended complaint filed in July, 2003, the plaintiff alleged that the defendant ran a stop sign at an intersection, entered the plaintiff's lane of travel and collided with her vehicle, causing her to sustain serious physical injuries, including severe injury to her right shoulder.

During the discovery phase of the case, the plaintiff disclosed as a medical expert Jeffrey Miller, an orthopedic surgeon from whom she sought treatment. The plaintiff's disclosure of Miller stated in relevant part: "Dr. Miller is expected to testify that as a result of the automobile collision of July 6, 2001, the plaintiff . . . suffered a 10 percent permanent partial impairment to her right shoulder, with respect to right rotator cuff

---

[1] The plaintiff also asserted a claim against Travelers Insurance Company, her underinsured motorist carrier. That claim later was severed and resolved in a separate proceeding and is not at issue in this appeal.

tendonitis and a 5 percent permanent partial impairment of her cervical spine. . . . Dr. Miller is expected to testify that the plaintiff suffers from right rotator cuff tendonitis and cervical strain/sprain with an associated cephalgia. *Dr. Miller is further expected to testify that shoulder surgery is an option for the plaintiff, and with regard to the surgical procedure, probability of recovery and cost.*" (Emphasis added.)

On September 17, 2003, the plaintiff filed a pretrial memorandum in which she summarized her damage claim and itemized a claim in the amount of $8000 for "future surgery" and a claim in the amount of $500 for "future lost wage post surgery." Following a discussion with the defendant's counsel at the pretrial, the plaintiff requested a more specific opinion from Miller regarding the likelihood of surgery. Miller prepared a responsive report on October 16, 2003, but did not forward the report to the plaintiff's counsel until November 10, 2003.

At approximately the same time she received this report, the plaintiff contacted Miller's office and requested photocopies of certain office notes from treatment sessions that had not already been disclosed. The plaintiff obtained photocopies of office notes from three visits—September 3, December 6 and December 20, 2002. On November 11, 2003, immediately upon receiving photocopies of these three office notes and the October 16 report, the plaintiff supplemented her earlier response to the defendant's production requests and provided photocopies of all four documents to the defendant.

On November 12, 2003, one day prior to jury selection, the defendant filed a motion to preclude introduction of the three office notes and the October 16 report, and to preclude Miller from providing testimony as to the contents of those records. The defendant argued that the production of the records on the eve of jury selec-

tion was prejudicial to him because they revealed new information about the extent of the plaintiff's injuries and, more particularly, the potential for future surgical intervention. The motion to preclude was denied by the court on November 19, 2003. The defendant then made an oral motion for a continuance, stating his desire to have the newly disclosed records reviewed by an expert. This motion also was denied.

Following a two day trial on November 19 and 20, 2003, the jury returned a plaintiff's verdict in the amount of $100,000. On November 28, 2003, the defendant filed a motion to set aside the verdict. This motion was denied by the court on January 12, 2004, and judgment was rendered in accordance with the jury's verdict. The defendant now appeals.

I

The defendant first claims that the court improperly denied his motion to preclude introduction of the four medical records. We disagree.

We review this claim, as we do most evidentiary matters, under the abuse of discretion standard. "[A] trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of substantial prejudice or injustice." (Internal quotation marks omitted.) *Fish* v. *Igoe*, 83 Conn. App. 398, 405–406, 849 A.2d 910, cert. denied, 271 Conn. 921, 859 A.2d 577 (2004).

In his brief, the defendant asserts that the newly disclosed records painted a picture of the plaintiff's

treatment different from that previously disclosed insofar as the newly disclosed records indicated that future surgery was probable given the plaintiff's limited responsiveness to more conservative treatment measures. The defendant claims that these records substantially and materially changed his understanding of the nature of the plaintiff's medical treatment. Upon our review of the record, we conclude that the information contained in the four records at issue was cumulative of information previously disclosed to the defendant and contained in the record.

In both his May 15, 2002 notes from an office visit and his January 31, 2003 permanency report, Miller discussed the potential need for surgical intervention if the plaintiff's symptoms failed to improve. The potential for surgery was also alluded to in the plaintiff's expert disclosure of Miller, which stated in relevant part that he is "expected to testify that shoulder surgery is an option for the plaintiff, and with regard to the surgical procedure, probability of recovery and cost."

Additionally, the possibility of surgical intervention was discussed at length by the plaintiff in her June 12, 2003 deposition, approximately five months before trial. In her deposition, the plaintiff was questioned about her injuries and course of treatment, including her discussions with Miller regarding the possibility of surgery to alleviate her right shoulder pain. The following colloquy occurred:

"Q. Do you have any further treatment?

"A. I have debated about seeing a neurologist. Doctor Miller said that I could opt for surgery for my rotator cuff. At this point it's not feasible for me to do that now with a little one because it would put me out of commission for a while.

"Q. Doctor Miller told you you could have surgery if you want?

"A. Yes, if I felt I needed it, yes."[2]

Finally, if none of these alerted the defendant that future surgery was a possibility, the plaintiff's pretrial memorandum, with specific itemized claims for the cost of future surgery and anticipated lost wages for a period of time following surgery, should have done so.

Miller's opinion that surgical intervention may be necessary if the plaintiff continued to experience symptoms was part of the evidentiary record well in advance of the late disclosure of the four medical records at issue. These records contained no new information that was not already contained in the record—to wit, the plaintiff's disclosure of expert witness, the plaintiff's sworn deposition testimony, Miller's permanency report, Miller's office note of May 15, 2002, and the plaintiff's pretrial memorandum. Given these numerous references to a potential need for surgery, the defendant cannot genuinely claim surprise by the discussions of surgery in the records at issue. The trial court did not abuse its discretion in denying the motion to preclude.

## II

The defendant next claims that the court improperly denied his motion for a continuance. We disagree.

Following the court's denial of the defendant's motion to preclude, the defendant's counsel orally requested a continuance, arguing that he needed time to have the four recently disclosed records reviewed by an expert. The court denied this request, reasoning: "I think you had all the information you needed to know to find out to your satisfaction exactly what was going on, and you decided to do it on the cheap or somebody didn't look at the file or whatever they did. But once

---

[2] The discussion of surgery continued for a short while, with the plaintiff stating what Miller explained to her about the potential efficacy of surgery in alleviating her shoulder pain.

he was disclosed, he's testifying as to surgery. . . . [T]here's no point in calling him to testify about the possibility of surgery other than for, you know, fear is compensable. But it was your burden at that point to get what the doctor is testifying. Once you get notice, whoever is calling the shots—I know you weren't—it's their poor judgment in deciding what to do or not to do. So, I am not going to give you a continuance for that."

"A trial court holds broad discretion in granting or denying a motion for a continuance. Appellate review of a trial court's denial of a motion for a continuance is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances. . . . An abuse of discretion must be proven by the appellant by showing that the denial of the continuance was unreasonable or arbitrary." (Internal quotation marks omitted.) *Robelle-Pyke* v. *Robelle-Pyke*, 81 Conn. App. 817, 823, 841 A.2d 1213 (2004).

On the basis of our determination that the motion to preclude was denied properly because the information contained in the records at issue was merely cumulative of other information already disclosed, we similarly conclude that the court did not abuse its discretion in denying the defendant's request for a continuance.

### III

The defendant next claims that the court improperly denied his motion to set aside or remit the jury's verdict. He argues specifically that the verdict was excessive, shocking to the conscience and was not supported by the evidence presented at trial. We decline to review this claim.

The defendant makes no argument as to why the verdict was excessive, but merely states, in a conclusory manner, that it was excessive. The defendant devotes

less than one full page of his brief to this claim and offers no substantive legal arguments, supporting facts or legal authority, aside from references to cases setting forth the applicable standard of review. Under these circumstances, we previously have refused to review an appellant's claim.

"[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]sssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Lowe* v. *Shelton*, 83 Conn. App. 750, 762, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004). We accordingly decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.