******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEPARTMENT OF TRANSPORTATION *v.*
CHERIHA, LLC, ET AL.
(AC 36041)

Sheldon, Keller and Prescott, Js.

*Argued October 28, 2014—officially released January 27, 2015*

(Appeal from Superior Court, judicial district of New Britain, Hon. Arnold W. Aronson, judge trial referee.)

*Michael J. Dyer*, with whom was *Ryan P. Barry*, for the appellant (named defendant).

*Eileen Meskill*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (plaintiff).

*Opinion*

SHELDON, J. The principal issue in this appeal is whether the trial court erred in reassessing the amount of damages to which the defendant Cheriha, LLC,[1] was entitled as just compensation for the taking of its 0.44 acre parcel of commercial property in New Britain, which the plaintiff, the Department of Transportation,[2] had condemned for the purpose of reconstructing an adjacent roadway. The plaintiff initially assessed damages for the taking in the amount of $125,000. The defendant thereafter appealed to the Superior Court, alleging that the plaintiff's assessment was inadequate. After a hearing on the defendant's claim, *Hon. Arnold W. Aronson*, judge trial referee, awarded the defendant damages in the amount of $243,840. The defendant appeals from that judgment, claiming that the trial court made several legal errors in admitting or evaluating certain evidence in the course of reaching its decision. We affirm.

The following facts and procedural history are relevant to the disposition of this appeal. The subject property is a triangle shaped parcel of land, approximately 0.44 acres in total area, located in the northeastern part of the downtown district of New Britain at the intersection of Beaver Street and Washington Street. The property is zoned B-3, Secondary Business District, which permits residential and commercial use.[3] On the date of the taking, improvements on the property consisted of a free-standing masonry building, approximately 2032 square feet in size, that included an attached, three bay automotive repair garage with supporting offices and a sales area. Prior to the taking, the property was occupied by the defendant's business, Cars R Us Used Cars Sales & Service.

On July 14, 2011, the plaintiff filed in the Superior Court a notice of condemnation and an assessment of damages for the taking in the amount of $125,000. On January 26, 2012, under the same docket number, the defendant filed an application for a reassessment of damages pursuant to General Statutes § 13a-76. A hearing on the defendant's application took place over the course of two days, beginning on January 25 and ending on February 25, 2013. The court heard testimony at the hearing from the defendant's real estate appraisers, Christopher Kerin and Jeff Arotsky, and from the plaintiff's appraiser, John LoMonte. Mohammed Cheriha, the former owner of the property, also testified as the personal representative of the defendant.

Using a sales comparison approach, the defendant's first appraiser, Kerin, determined that the fair market value of the property at the time of the taking was $320,000. Kerin based his determination on recent sales of four properties in New Britain that he considered comparable to the subject property. The defendant's

second appraiser, Arotsky, also using a sales comparison approach, concluded that the fair market value of the property was $340,000. Arotsky based his conclusion on the recent sales of four other local properties that he considered comparable to the subject property, although no such property was in New Britain. Cheriha testified as to his purchase of the property in 1998, his subsequent use of the property for his business, the defendant LLC, and his personal opinion as to the fair market value of the property. He opined that the fair market value of the property at the time of its taking was approximately $850,000.

The plaintiff's appraiser, LoMonte, also employed a sales comparison approach to assess the value of the property. Using three sales of properties in New Britain that he considered to be comparable to the subject property, LoMonte concluded that the fair market value of the property at the time of its taking was approximately $125,000.

In his memorandum of decision dated August 7, 2013, Judge Aronson found that two of the properties used as comparables by the testifying experts were most similar to the subject property. The first such property, on which Kerin had relied, was a 0.39 acre parcel with a three bay automotive repair garage in New Britain, which had sold for $337,000, or $167.16 per square foot in September, 2010. The second such property, on which LoMonte had relied, was a 0.4 acre parcel with an automotive garage, also in New Britain, which had sold for $300,000 dollars, or $73.96 per square foot, in October, 2009. Based upon the sales of these similar properties, at what he calculated to be the average unit price of $120 per square foot, Judge Aronson concluded that the fair market value of the subject property at the time of its taking was $243,840. Judge Aronson thereby increased by $118,400 the amount of damages awarded to the defendant. Thereafter, the defendant filed this appeal challenging the court's judgment on three grounds. The defendant claims: first, that the court improperly precluded one of its witness, Dr. Sheik Ahmed, from testifying personally as to a letter of intent to purchase the property that he had prepared seventeen months prior to the taking; second, that the court should not have considered LoMonte's appraisal because he listed the incorrect zone for the property in his report; and third, that the court failed to give proper weight to Cheriha's personal opinion as to the fair market value of the property. We reject each of the defendant's claims and, thus, affirm the judgment of the trial court.

We begin by setting forth certain relevant legal principles. "The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const., art. I, § 11." *Lynch* v. *West Hartford*, 167 Conn. 67, 73, 355 A.2d 42 (1974). "The paramount law intends that

the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken." *Colaluca* v. *Ives*, 150 Conn. 521, 530, 191 A.2d 340 (1963). "[T]he amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 828, 776 A.2d 1068 (2001). "Generally speaking, market value is the price that would in all probability—the probability being based upon the evidence in the case—result from fair negotiations, where the seller is willing to sell and the buyer desires to buy." (Internal quotation marks omitted.) *Budney* v. *Ives*, 156 Conn. 83, 88, 239 A.2d 482 (1968).

Section § 13a-76 provides for a reassessment of damages where the property owner claims the amount of compensation assessed for the taking is insufficient. Pursuant to § 13a-76, the court "shall hear the applicant and the commissioner, may view the land, and shall take such testimony as the court or . . . judge trial referee deems material and shall thereupon reassess such damages . . . ." See *Branford* v. *Santa Barbara*, 294 Conn. 785, 795–96, 988 A.2d 209 (2010). In condemnation hearings, the trial court, "sitting as a court [of] appeals . . . is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of [our Supreme Court] with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." *Birnbaum* v. *Ives*, 163 Conn. 12, 21, 301 A.2d 262 (1972).

I

The defendant first claims that the court erred in precluding its witness, Ahmed, from testifying personally to a letter of intent to purchase the property for $850,000, which he had prepared on or about February 3, 2010, approximately seventeen months prior to the taking. More specifically, the defendant claims that the court erred in determining that the proffered evidence required expert testimony, and thus in concluding that it could not be presented through Ahmed because he lacked sufficient expertise to testify as an expert in property valuation. The defendant argues on appeal that the court's preclusion of Ahmed's testimony was a prejudicial error, because it prevented it from presenting its theory of the case, namely, that Ahmed's interest in the property for retail use[4] and related estimation of its value for that purpose demonstrated that the property was worth considerably more than it had been appraised for by the plaintiff, or even by its own experts, all of whom had based their appraisals on the property's current use for automotive-related services. The defen-

dant acknowledges that Ahmed's letter of intent was subsequently admitted into evidence as a partial basis for Cheriha's testimony on fair market value. It claims, however, that the evidence, so presented, carried less weight than it would have had it been presented personally by Ahmed. In addition, the defendant argues that Ahmed's testimony as to his own intended use of the property in 2010, which was "different than that which [the defendant's] experts considered to be [its] highest and best use," could have assisted the trial court in "determining how the property could be used most advantageously." We are not persuaded.

We review the defendant's claim in accordance with certain well settled legal principles. The court has broad discretion in determining what evidence is properly allowed in an eminent domain proceeding. See *West Haven* v. *Norback*, 263 Conn. 155, 172, 819 A.2d 235 (2003). "[A] trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of discretion. . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of substantial prejudice or injustice." (Internal quotation marks omitted.) *Cote* v. *Machabee*, 87 Conn. App. 627, 630, 866 A.2d 639 (2005). A party seeking a new trial because of an improper evidentiary ruling has "the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result." (Internal quotation marks omitted.) *Washington* v. *Christie*, 58 Conn. App. 96, 100, 752 A.2d 1127, cert. denied, 254 Conn. 906, 755 A.2d 884 (2000).

Evidence in eminent domain proceedings consists primarily of the opinions of experts who are well informed on the subject of property valuation. "The role of an expert witness is to furnish the trier with special guidance drawn from his or her particular training, knowledge or experience." *DiBella* v. *Widlitz*, 207 Conn. 194, 202, 541 A.2d 91 (1988) (expertise in property appraisal generally is predicated on specialized training coupled with study of subject property to determine its value). A property owner is also allowed to testify to the value of his own property on the theory that he has unique knowledge with respect to its value by virtue of his ownership. See *Misisco* v. *La Maita*, 150 Conn. 680, 684, 192 A.2d 891 (1963). Property ownership usually entails knowledge of the original price paid for the property, of improvements that have been made subsequent to its purchase, and of the current condition of the property. On the basis of such knowledge, the owner, although a layperson, is deemed to have a sufficient basis in personal experience to support an opinion

about the property's value that may assist the court in making its determination on that subject.

In this case, the defendant asserts that Ahmed's proffered testimony should have been admitted because it related solely to the *fact* of Ahmed's intended purchase of the property for $850,000. It further argues that such testimony should not have been excluded as an inadmissible opinion of a nonexpert nonowner as to the property's value.

The defendant's argument is belied by the record in this case, which discloses that the defendant sought to introduce Ahmed's testimony regarding his preliminary offer as expressed in the letter of intent on the basis that it was "indicative of the fair market value" of the property. In addition, in its offer of proof, the defendant suggested that Ahmed should be permitted to testify because of his extensive background in the buying and selling of commercial properties.[5] In light of this, it is clear that although the defendant identified Ahmed as a fact witness, it predicated the usefulness of his testimony on his asserted ability to assess the value of the property as an expert. Accordingly, it was not an abuse of discretion for the court to preclude his testimony on the basis that he lacked the expert qualifications to do so.

We also reject the defendant's argument that Ahmed's ability to testify to facts establishing the highest and best use of the property would have assisted the trier of fact in determining the value of the property, and thus that it should have been admitted. There are two problems with the defendant's assertion. First, as the plaintiff points out, Ahmed's proposed use of the property, expressed seventeen months prior to the taking, is speculative. The record reveals that there was no firm offer to purchase the property for that amount, let alone an actual agreement between Ahmed and the defendant to purchase the property.[6] Second, the highest and best use of a property, again, is a concept that is used by expert appraisers; see *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 25, 807 A.2d 955 (2002); and Ahmed was never sufficiently shown to have any expertise on that subject.

Moreover, there is no evidence that the court's ruling impacted the outcome in this case. As indicated previously, the property owner, Cheriha, testified to the letter of intent and Ahmed's apparent willingness, based upon it, to enter into discussions concerning the possible purchase of the property for $850,000. The letter was admitted into evidence as a full exhibit at that time.

II

Next, the defendant challenges the trial court's decision to base its reassessment of the fair market value of the property in part on LoMonte's sales comparison analysis. We disagree.

"Ultimately, the determination of the value of the property [is] a matter of opinion and depend[s] on the considered judgment of the [trial court], taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties." *Moss* v. *New Haven Redevelopment Agency*, 146 Conn. 421, 425, 151 A.2d 693 (1959). Accordingly, we review the court's findings under the highly deferential, clearly erroneous standard of review. "[W]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 706–707, 966 A.2d 188 (2009).

With these principles in mind, we address the defendant's claim. The defendant argues that LoMonte's method of determining the fair market value of the property was inherently flawed because he mistakenly indicated in his appraisal report that the property is located in a T Residential District zone, when in fact the property is located in a B-3 Secondary Business District zone. More particularly, the defendant asserts that "given the incorrect zoning, [LoMonte] neglected to consider a whole body of comparable sales that would have had higher property values and would have been comparable to the subject property." Thus, he argues, "the court's consideration of his sales comparison analysis was clearly erroneous."[7] The defendant's argument lacks merit.

At trial, LoMonte acknowledged that he incorrectly identified the zone of the property in his report. LoMonte testified, however, that the error had no impact on his sales comparison analysis because the criteria he used to select comparables was the highest and best use of the property, which he determined was its continued use for automotive related services. Accordingly, LoMonte testified that he selected properties that were commercially zoned and adapted for similar purposes.[8]

The court adopted the sales comparison approach to assess the value of the property.[9] The court selected one property in LoMonte's appraisal that it deemed comparable to the subject property: an automotive garage located on 0.4 acres in a B-1 Business District zone that sold for $300,000 in October, 2009. The court also relied on a sale of property identified by the defen-

dant's expert, Kerin, a three bay automotive repair garage situated on 0.39 acres located in a B-3 Secondary Business District zone that sold for $337,000 in September, 2010. On the basis of these two sales, the court concluded that a fair determination of the market value of the property on the date of the taking was $243,840.

To the extent that the defendant argues that LoMonte's sales comparison improperly excluded other legally conforming potential uses for B-3 properties and, thus, the court's reliance on limited aspects of his report somehow tainted the court's valuation, the defendant stands on weak footing. Here, the court found that the defendant's own experts, like LoMonte, narrowed the highest and best use of the property to automotive related purposes, thus the defendant's claim with respect to LoMonte's allegedly failed methodology is strained at best.[10] Moreover, the sales comparables that the court ultimately relied on to reach an opinion as to the fair market value of the property were both commercially zoned and put to similar use for automotive related purposes.

Although LoMonte incorrectly referred to zone T in his report, he identified the existing use of the subject property and found comparable properties based on their use for similar purposes. In so doing, he used a methodology that was similar to that of the defendant's own experts. "The [court] was at liberty to accept and give effect to the testimony of . . . the witnesses as he believed to be helpful to him, and to so much of the recognized methods employed by the expert witnesses as a basis for their testimony as he considered most applicable to the situation before him." *Moss* v. *New Haven Redevelopment Agency*, supra, 146 Conn. 425. The court credited certain aspects of LoMonte's testimony that it deemed credible and reliable, weighed the evidence and reached an independent determination as to the property's value. "There is nothing to show that in determining the value of the [defendant's] land the [trial court] misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration, which it was his duty to regard." (Internal quotation marks omitted.) *A & M Realty* v. *Dahms*, 217 Conn. 95, 101, 584 A.2d 466 (1991). On the basis of the record before us, we do not find that the court erred in considering LoMonte's report and reaching its determination as to the value of the property utilizing certain elements of that report.

## III

Last, the defendant claims the court erred in its valuation because it did not consider Cheriha's testimony. With respect to the court's purported lack of consideration, the defendant points to the absence of any explicit reference to his testimony in its memorandum of decision. We reject the defendant's claim.

Cheriha testified to his acquisition of the property in 1998 and its subsequent use as a location for his business. In addition, the court, over the plaintiff's objection, permitted Cheriha to testify to offers that had been made on the property by three different individuals going back as far as 2007, including Ahmed's aforementioned letter of intent. Cheriha testified that he believed the fair market value of the property at the time of the taking in July, 2011, was $850,000—a figure he based in part on Ahmed's letter of intent and his own prior sale of two other gas stations, one in New Britain and the other in Vernon. The $850,000 sum was considerably higher than the value expressed by the defendant's experts, Kerin and Arotsky, who assessed the value of the property at $320,000 and $340,000, respectively.

"It is true that the trier must consider each factor which may reasonably affect the value of the property, as the [defendant] maintains, but it is not essential that each element be meticulously recited in the memorandum." *McDermott* v. *New Haven Redevelopment Agency*, 184 Conn. 444, 446, 440 A.2d 168 (1981). Our rules of practice require only that the court recite its conclusion and the factual basis therefor. See Practice Book § 6-1 (a). The facts found and the conclusions reached must be adequate to support the judgment. *Garofalo* v. *Argraves*, 147 Conn. 685, 687, 166 A.2d 158 (1960). Contrary to the defendant's assertion, there is no requirement that the trial court report in its decision the evidence adduced at trial.

In the present case, the court issued a comprehensive decision describing the basis for its independent determination as to the fair market value of the property. The court was not required to discuss Cheriha's opinion testimony on that issue in reaching or explaining that independent determination. There is no error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Source One Financial Corporation, Homeowner's Finance Co., and the City of New Britain, Tax Collector, were named in the plaintiff's notice of condemnation, but they are not parties to this appeal. We refer to Cheriha, LLC, as the defendant.

[2] Because the Commissioner of Transportation acts on behalf of the Department of Transportation, references in this opinion to the plaintiff include both the commissioner and the department.

[3] Permitted uses in B-3 zone include apartments above first story nonresidential use, animal hospitals, banks, offices, retail space, restaurants, research laboratories, and bus shelters. Uses permitted via special exception include gas stations, motor vehicle sales, and automotive service and repair garages.

[4] Ahmed purportedly intended to use the property for a brewery.

[5] The defendant specifically identified Ahmed's "knowledge base" as a "savvy commercial investor" and his related ability "to make an offer on the property, assess the property and make an adequate offer on the property."

[6] The letter of intent specifically states that it "is intended solely as a preliminary expression of general intentions and is to be used for discussion purposes only." In addition, the letter was not signed by the defendant.

[7] In its initial brief to this court, the defendant averred that LoMonte only considered properties zoned for residential use. The defendant acknowledges in its reply brief that in fact *none* of LoMonte's selected sales compara-

bles were zoned residential, thus rendering the defendant's previous assertion inaccurate. Nonetheless, the defendant persists in this argument, claiming, that LoMonte limited his search for comparable sales as a result of the zoning error.

[8] LoMonte's comparables were all located in either a business or industrial zone.

[9] Although other methods of valuation were also utilized in the expert appraisals that were presented at the hearing, the court relied on the sales comparison approach to reach an opinion as to the value of the property on the basis that it was the most credible method of valuation given the relevant facts. Factors that affect the comparability of sales and bear on their usefulness in determining the value of the subject property include, location, size, shape, time of the sale, similarity of use to which the property is put, adaptability, zoning and available utilities. 27 Am. Jur. 2d, Eminent Domain § 538 (2014). Differences as to these factors generally go to the weight of the evidence of the comparable sale, rather than its admissibility. Id., § 539. Moreover, the weight to be given to the evidence is for the trier of fact. Id.

[10] It is difficult to reconcile the defendant's argument that LoMonte's methodology was "inherently flawed" with the record in this case, which discloses that the defendant did not object to the admission of LoMonte's report at trial.

———————————————